**UNITED STATES**

**v.**

**Airman First Class Richard L. ANDERSON, United States Air Force.**

**ACM 34980.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 19 Dec. 2001.

Decided 7 June 2004.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Maria A. Fried, and Major Kyle R. Jacobson.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Lance B. Sigmon, and Captain C. Taylor Smith.

Before PRATT, Chief Judge, MALLOY and GRANT, Appellate Military Judges.

OPINION OF THE COURT

PRATT, Chief Judge:

Pursuant to a pretrial agreement, the appellant pled guilty to (1) violating 18 U.S.C. § 2251(c)(1)(A) by posting a notice on the Internet seeking to receive or exchange images of minors engaged in sexually explicit conduct, (2) violating 18 U.S.C. § 2252A(a)(1) by transporting child pornography in interstate commerce, (3) violating 18 U.S.C. § 2252A(a)(5)(B) by possessing child pornography that had been transported in interstate commerce, and (4) violating Article 92, UCMJ, 10 U.S.C. § 892, by using a government computer to store, display or transmit offensive or obscene materials. The military judge, sitting alone as a general court-martial, accepted the appellant's pleas and sentenced him to a dishonorable discharge, confinement for 30 months, and reduction to E–1. The convening authority approved the sentence as adjudged.

On appeal before this Court, the appellant asserts that the military judge erred during the sentencing portion of his trial by admitting as aggravation evidence, over defense objection, a Senate Report on the impact of child pornography. We disagree. However, we find error elsewhere, although not raised. Specifically, we find that the appellant's guilty pleas to some of the specifications are *improvident*, but can be sustained to lesser included offenses under Article 134, UCMJ, 10 U.S.C. § 934. Ultimately, we affirm modified findings and the adjudged sentence.

*I. Background*

The appellant was a fire protection apprentice stationed at Fairchild Air Force Base, Washington. Beginning in early 2000, using government-provided computers at an on-base "Cyber Café,"[1] the appellant used the Internet to access and transport both adult and child pornography. In October 2000, the appellant obtained a personal computer for his on-base home, and began also using that computer for such activities. The appellant maintained 10 email accounts to access "MSN Communities" and "Yahoo Clubs" to look for, and ultimately download, child pornography. At one point, he created and posted two Yahoo "profiles" through which he presented himself as a 14–year–old lesbian offering to exchange sexually explicit pictures.

When a Cyber Café volunteer discovered pornography on several computers, an investigation ensued by the Air Force Office of Special Investigations. Analysis of the computers led investigators to the appellant, who confessed his activity both at the Cyber Café and at home. A search of the Cyber Café computers resulted in discovery of several hundred pictures, attributable to the appellant, that were identified as suspected child pornography. Similarly, a consent search of the appellant's home computer disclosed several hundred more pictures of suspected child pornography.[2] At trial, the government introduced 25 images of children engaging in sexually explicit conduct including oral sodomy and intercourse involving very young females, young males, and adult males.

1. The "Cyber Café" is part of the base morale and welfare program, designed to provide Internet access primarily for airmen who do not own their own computers.

2. A stipulation of fact entered into in conjunction with the appellant's guilty pleas indicates that a pediatrician evaluated over 1000 images from the appellant's home computer and determined that there were 472 images of prepubescent children (under the age of 11 years) and 448 images of pubescent children (between 11 years of age and 18 years of age). Of these same images, 211 are of children involved in sexual acts, 278 are of children in sexually explicit poses, and the remainder are children who are naked.

*II. Providence of Guilty Pleas*

In Specifications 1, 2, and 3 of Charge I, the appellant pled guilty to offenses involving images of child pornography—posting a notice seeking such images, transporting such images, and possessing such images. Although not raised as error, we are obliged to examine the providence of these pleas in light of the Supreme Court's decision in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), and the subsequent Court of Appeals for the Armed Forces' (CAAF) decision in *United States v. O'Connor,* 58 M.J. 450 (C.A.A.F. 2003).

In determining whether a guilty plea is provident, the test is whether there is a "substantial basis in law and fact" for questioning the plea. *United States v. Jordan,* 57 M.J. 236, 238 (C.A.A.F.2002) (citing *United States v. Prater,* 32 M.J. 433, 436 (C.M.A. 1991)). In order to establish an adequate factual basis for a guilty plea, the military judge must elicit "factual circumstances as revealed by the accused himself [that] objectively support that plea." *Id.* at 238. (quoting *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A.1980)). We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Eberle,* 44 M.J. 374 (C.A.A.F.1996).

*A. Violation of 18 U.S.C. § 2251(c)(1)(A)*

Specification 1 of Charge I charges the appellant with posting a notice on the Internet seeking or offering to receive and exchange visual depictions produced through the use of "a minor engaged in sexually explicit conduct," in violation of 18 U.S.C. § 2251(c)(1)(A). As this statutory provision does not make use of the term "child pornography," it does not implicate the definitions of that term which are contained in 18 U.S.C. § 2256(8), a portion of which was held constitutionally overbroad in *Free Speech Coalition.* During the providence inquiry, the military judge properly described the elements of this offense in terms of minors engaging in sexually explicit conduct, and defined for the appellant the terms "minor" and "sexually explicit conduct" using the definitions contained in 18 U.S.C. § 2256(1) and (2).

Further, many of the actions prohibited in § 2251(c)(1)(A) avoid the legal affliction of offenses under § 2252A because the gravamen of the offense is simply the advertisement of one's willingness to be involved with child pornography. If one advertises (as in this case) one's willingness to receive and exchange such depictions, nothing in the statute requires that the willingness relate to any particular, already existing images. *United States v. Pabon–Cruz,* 255 F.Supp.2d 200, 209 (S.D.N.Y.2003). Nor, then, does it make sense to afford the appellant the benefit of a debate over the "real" versus "virtual" nature of the images intended for the exchange:

> Someone who advertises his desire to receive child pornography, at least without affirmatively specifying that he is seeking only simulated depictions, is directly encouraging the production and distribution of material created by abusing children. A recipient or reader of such an advertisement who is willing to respond has no reason to limit himself to providing simulations, and the person posting the advertisement has every reason to know that he is soliciting or encouraging the creation and distribution of actual child pornography. No constitutional constraint requires that someone who posts such an advertisement must be protected unless he subjectively harbors an affirmative preference for depictions of actual child abuse.

*Id.* at 210.

Accordingly, we find no basis to question the providence of the appellant's guilty plea to this offense.

*B. Violations of 18 U.S.C. § 2252A*

Specifications 2 and 3 of Charge I charge the appellant with transporting and possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and (a)(5)(B), respectively. These statutory provisions are couched in terms of "child pornography" and, thus, do rely on the definitions contained in 18 U.S.C. § 2256(8). During the providence inquiry on these specifications, the military judge defined "child pornography" in accordance with the law as it existed at the time of trial, i.e., as defined by 18 U.S.C. § 2256(8).

However, several months after the appellant's court-martial, the Supreme Court released its opinion in *Free Speech Coalition,* wherein the Court found that some of the definitional language in 18 U.S.C. § 2256(8) unconstitutionally infringed upon free speech. Specifically, the Court found that the language of § 2256(8)(B), proscribing an image or picture that "appears to be" of a minor engaging in sexually explicit conduct, and the language of § 2256(8)(D), sanctioning visual depictions that are advertised, promoted, presented, described, or distributed in such a manner that "conveys the impression" that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct, were overbroad and, therefore, unconstitutional. *Free Speech Coalition,* 535 U.S. at 256–58, 122 S.Ct. 1389. In effect, while the Supreme Court reiterated that the government could constitutionally prohibit pornography involving actual children, it may not seek to proscribe images of "virtual" children. *Id.* at 240, 122 S.Ct. 1389.

Thereafter in *O'Connor,* CAAF reiterated that, "[i]n the wake of *Free Speech Coalition,* the relevant provisions of 18 U.S.C. § 2256(8) require that the visual depiction be of an actual minor engaging in sexually explicit conduct. The 'actual' character of the visual depictions is now a factual predicate to any plea of guilty under the CPPA."[3] *O'Connor,* 58 M.J. at 453.

In the case sub judice, then, the military judge's use of the constitutionally overbroad definitional language constituted an error of law. However, we must determine whether the appellant was materially prejudiced thereby. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. Powell,* 49 M.J. 460, 464 (C.A.A.F.1998). "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The test for determining whether a constitutional error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Thus, in order to sustain the appellant's guilty plea as provident, we must find "factual circumstances as revealed by the accused himself" that support a conclusion that he was pleading to the possession and transporting of pornographic images of *actual* children. *Davenport,* 9 M.J. at 367; *United States v. Dodge,* 59 M.J. 821 (A.F.Ct.Crim.App.2004). In other words, we must be certain that the appellant did not rely upon the "appears to be" or "conveys the impression" language as part of the definition of child pornography. In our view, if this can be established beyond a reasonable doubt, constitutional harmless error would apply and the plea could be sustained.

In *O'Connor,* during the providence inquiry, the military judge asked the accused why he believed the material in question constituted child pornography, to which he replied, "the occupants in the pictures *appeared to be* under the age of 18." *O'Connor,* 58 M.J. at 453. Relying on *Free Speech Coalition,* CAAF found it could not sustain the plea because "it is unclear from the providence inquiry and record here whether Appellant was pleading guilty to possession of virtual or actual child pornography." *Id.* at 453–54. Therefore, the Court set aside the affected findings and sentence.

In guilty plea cases tried before the Supreme Court's decision in *Free Speech Coalition* (like *O'Connor*), it is not surprising that military judges did not address the now-critical distinction between "actual" versus "virtual" children during the providence inquiry. However, this distinction is sometimes clearly established through the discussion of the offense by the judge and the accused during that inquiry. For instance, if an accused expresses concern for the trauma experienced by the children in certain images, this would serve as a clear acknowledgement that actual children are depicted. *See United States v. Sherman,* 268 F.3d 539, 547 (7th Cir.2001) ("the children depicted in the pornography suffer a direct and primary emotional harm when another person possesses, receives or distributes the material").

3. Child Pornography Prevention Act of 1995 (CPPA).

Even without such specific reference normal usage and common sense suggest that repeatedly describing a person as a "minor" or a "child," without any qualifying language such as "appears to be," "virtual," or "computer-generated," indicates reference to a real person. *See United States v. James,* 55 M.J. 297, 300–01 (C.A.A.F.2001) (the appellant's admissions that the images "depicted young females under the age of eighteen" and "minors" reasonably suggested depiction of actual minors).

Thus, in some cases, where the colloquy between the military judge and the accused contains clear acknowledgement that the images are of "minors" and "children under the age of 18," where a stipulation of fact contains similar admissions lending themselves to no explanation other than the fact that the accused is admitting to the involvement of real children in the charged depictions, and where our review of the pictures themselves clearly reinforces our conclusion that actual children are the subjects of the images, it is possible for us to find the requisite factual predicate and determine that the unconstitutional "appears to be" and "conveys the impression" definitions did not play a role in the appellant's guilty plea. Article 59(a), UCMJ; *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. 824.

In this case, however, we cannot. In the stipulation of fact, in the discussion thereof during the providence inquiry, in the rendition of the elements of the offenses, and in the explanation of terms used therein, the military judge repeatedly read to the appellant, or otherwise referenced, the "appears to be" and "conveys the impression" definitions in 18 U.S.C. § 2256(8)(B) and (D). Further, the ensuing colloquies between the military judge and the appellant lack meaningful depth or any clear insight into the critical distinction between actual and virtual children. In this context, we cannot conclude with a sufficient degree of certainty that the appellant was not relying on the constitutionally-stricken definitions.[4] Therefore, we hold that his pleas to these offenses were improvident.

*III. Lesser Included Offenses*

Although we conclude that certain findings of guilty cannot stand due to an error of law, we may affirm findings of guilty to lesser included offense if adequately supported by the record and not similarly tainted. Article 59(b), UCMJ, 10 U.S.C. § 859(b); *United States v. Zupancic,* 18 M.J. 387, 388–90 (C.M.A.1984). The pleas we hold improvident are to specifications alleging violation of Federal statute, "crimes and offenses not capital" under clause 3 of Article 134, UCMJ. The question remains, then, whether we should nevertheless find the appellant's pleas provident as to lesser included offenses under Article 134, clause 1 (conduct prejudicial to good order and discipline) or clause 2 (conduct of a nature to bring discredit upon the armed forces). Article 134, UCMJ; *Manual For Courts–Martial, United States (MCM),* Part IV, ¶ 60c(2) and (3) (2002 ed.). *See United States v. Augustine,* 53 M.J. 95 (C.A.A.F.2000); *United States v. Sapp,* 53 M.J. 90 (C.A.A.F.2000).

Our superior court began to address this issue in *O'Connor* wherein, despite a stipulation of fact that the accused's conduct was service-discrediting, the Court found that the lack of any discussion of this element during

4. The federal circuits have held that juries are still capable of distinguishing between real and virtual images, rejecting the argument that, in the wake of *Free Speech Coalition,* the government must produce expert testimony in order to prove that the prohibited images are of real, not virtual, children. *United States v. Hilton,* 363 F.3d 58 (1st Cir.2004); *United States v. Slanina,* 359 F.3d 356, 357 (5th Cir.2004); *United States v. Kimler,* 335 F.3d 1132, 1142 (10th Cir.2003), *cert. denied,* — U.S. ——, 124 S.Ct. 945, 157 L.Ed.2d 759 (2003); *United States v. Deaton,* 328 F.3d 454, 455 (8th Cir.2003); *United States v. Hall,* 312 F.3d 1250, 1260 (11th Cir.2002), *cert denied,* 538 U.S. 954, 123 S.Ct. 1646, 155 L.Ed.2d 502 (2003). We agree and, indeed, our review of the images in evidence in this case leads us to conclude, without question, that these are depictions of actual children. But this alone is not enough in the context of a guilty plea case. Although we believe that our review of the images can reinforce a determination that an appellant was pleading guilty to offenses involving depictions of actual children, it cannot serve as the sole basis for that determination or otherwise substitute for the requirement that the plea be objectively supported by factual circumstances "as revealed by the accused himself." *Davenport,* 9 M.J. at 367.

the providence inquiry precluded finding his plea provident to the lesser included offense under clause 2 of Article 134, UCMJ. *O'Connor,* 58 M.J. at 454. While acknowledging their holdings in *Augustine* and *Sapp,* where they sustained findings to the lesser included offense, CAAF expressed a belief that *Free Speech Coalition* had somehow changed the landscape on this issue:

> The Supreme Court has now extended a cloak of First Amendment protection to certain depictions of minors engaging in sexually explicit conduct. Accordingly, the question of whether or not the possession of such visual depictions can be viewed as service discrediting now has a constitutional dimension that was not at issue in *Sapp* or *Augustine.*

*Id.* at 454. If indeed such a "cloak" was extended, it must necessarily be limited to those visual depictions which do not involve actual children *and* which fall short of offending the still-viable obscenity standards enunciated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (works which, taken as a whole, appeal to the prurient interest, are patently offensive in light of community standards, and lack serious literary, artistic, political, or scientific value). *See also United States v. Sollmann,* 59 M.J. 831, 836 (A.F.Ct.Crim.App.2004.) In the case sub judice, the 25 images admitted into evidence by the prosecution consist of graphic images of very young girls performing fellatio on adult males or on male minors, or being penetrated vaginally by these men and boys, sometimes in combination. Our review of these images—whether actual or virtual—leaves us with no concern that these visual depiction might occupy a protected constitutional "gap" between *Miller* and *Free Speech Coalition.*

In *O'Connor,* CAAF's concern seemed to center on whether the accused "clearly understood the nature of the prohibited conduct." *O'Connor,* 58 M.J. at 454 (quoting *Sapp,* 53 M.J. at 92). This concern was tied, once again, to the lack of any specific discussion during the plea inquiry as to the service-discrediting nature of the conduct. Ultimately, CAAF determined that the factual backdrop of *O'Connor* did not provide the proper setting in which to closely examine and resolve the issue:

> Accordingly, we do not address the question of whether, in the wake of *Free Speech Coalition,* the possession, receipt or distribution of images of minors engaging in sexually explicit conduct (regardless of their status as "actual" or "virtual") can constitute conduct of a nature to bring discredit upon the armed forces for purposes of clause 2 of Article 134.

*Id.* at 455.

The Supreme Court long ago recognized that "[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian." *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). The fact that First Amendment protection might extend to our civilian populace for certain conduct does not necessarily mean that such conduct would not be a prosecutable offense under the UCMJ if committed by a military member:

> While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.

*Parker v. Levy,* 417 U.S. 733, 758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Indeed, examples abound in the Uniform Code of Military Justice of offenses which apply exclusively to military members, both delineated articles (e.g., Articles 88, 89, 91, 117, UCMJ, 10 U.S.C. §§ 888, 889, 891, 917) and the two "catch-all" articles (Article 133, proscribing conduct "unbecoming an officer and gentleman," and Article 134, proscribing "disorders and neglects to the prejudice of good order and discipline in the armed forces" and "conduct of a nature to bring discredit upon the armed forces"). 10 U.S.C. §§ 933, 934. These latter articles make punishable a wide variety of behaviors, some delineated and some not. *See MCM,* Part IV, ¶ 61–113; *Sollmann,* 59 M.J. at 834 (good listing of

example cases). The gravamen of these offenses is the adverse impact upon the military service; it is not necessary that the conduct itself otherwise be a crime. *Parker v. Levy,* 417 U.S. at 749, 94 S.Ct. 2547; *United States v. Bilby,* 39 M.J. 467, 470 (C.M.A.1994). Where such conduct includes speech, the forbidden speech is measured by its tendency to damage the reputation of the military, not its actual effect. *United States v. Saunders,* 59 M.J. 1, 11 (C.A.A.F.2003); *United States v. Hartwig,* 39 M.J. 125, 130 (C.M.A.1994) (citing *United States v. Priest,* 45 C.M.R. 338, 345, 1972 WL 14190 (C.M.A. 1972)).

In all these instances, before a military member can be charged with an offense under Article 133 or Article 134, due process requires that the member have "fair notice" that the conduct at issue is forbidden and subject to criminal sanction. *United States v. Vaughan,* 58 M.J. 29, 31 (C.A.A.F.2003) (citing *United States v. Bivins,* 49 M.J. 328, 330 (C.A.A.F.1998)). Put another way, in the context of Article 134, the issue is whether a reasonable military member would know that his or her conduct was service-discrediting (and, therefore, punishable under the Article). *See United States v. Sullivan,* 42 M.J. 360, 366 (C.A.A.F.1995); *Hartwig,* 39 M.J. at 130; *United States v. Frazier,* 34 M.J. 194, 198 (C.M.A.1992); *United States v. Guerrero,* 33 M.J. 295, 297 (C.M.A.1991) ("appellant was on notice that conduct which ... brings discredit upon the Navy is an offense under Article 134"). Although pre-*Free Speech Coalition,* the words of our superior court in *Sapp* are instructive:

> It is clear from reading Article 134 that conduct which violates no specific statute may still be an offense thereunder if it is found to be prejudicial to good order and discipline or if it is of a nature to bring discredit upon the armed forces. *See United States v. Williams,* 17 MJ 207, 215–16 (CMA 1984); *United States v. Mayo,* 12 MJ 286, 289 (CMA 1982); *United States v. Long,* 2 USCMA 60, 6 CMR 60, 1952 WL 2276 (1952). We have no doubt that the knowing possession of images depicting sexually explicit conduct by minors, when determined to be service-discrediting conduct, is a violation of Article 134.

*Sapp,* 53 M.J. at 92. *See also Augustine,* 53 M.J. at 96.

In the case sub judice, as in *O'Connor,* the appellant entered into a stipulation of fact wherein he specifically agreed that his conduct was of a nature to bring discredit upon the armed forces. Unlike *O'Connor,* however, there was also specific discussion during the plea inquiry of the service-discrediting character of the appellant's conduct. Indeed, although unnecessary for offenses brought under clause 3 of Article 134, the military judge included as an element of each of the Article 134 offenses that the conduct "was wrongful and was of a nature to bring discredit upon the Armed Forces." Then, during their colloquy as to each offense, the military judge asked the appellant to explain in his own words why he believed his conduct met this element. Each time, the appellant articulated his belief that his actions were discrediting:

> As to Specification 1: [5]
>
> ACC: Yeah. If people knew I was doing—knowing what I was doing, as a member of the Armed Forces, they look at me as part of it. And so, from my actions, they form an opinion of the Armed Forces. And my actions would discredit the Armed Forces.

As to Specification 2:

> ACC: It was the same as specification 1. It was knowing what I was doing. I knew what I was doing. Because I am a member of the Armed Forces, they would view me—I just lost my train of thought.
>
> MJ: Take your time.
>
> ACC: What I was going to say, I was part of the Armed Forces, they would view me as, you know, they look at me as the Armed Forces, and what I did, it would make the Armed Forces look bad.

As to Specification 3:

> ACC: Because the general public people view me as part of the—well, I am part of

5. While Specification 1, the violation of § 2251(c)(1)(A), is not an issue now, it was the first offense as to which the appellant addressed the element of service discredit.

the military, they view the military partly in light of my actions.

Clearly then, several times in the stipulation of fact, several more times in the course of a discussion with the military judge concerning the stipulation of fact, and three separate times during the providence inquiry, the appellant asserted, agreed and articulated a belief that his conduct, involving images of minors engaged in sexually explicit conduct, was of a nature to bring discredit upon the armed forces. Again, as indicated earlier, a review of the 25 images admitted into evidence by the prosecution readily bears out the appellant's belief beyond any question. These graphic images remove any reasonable doubt that they are—*whether of actual or "virtual" children*—of a nature to bring considerable discredit upon the armed forces.

As noted earlier, we are obliged to find the appellant's pleas to Article 134, clause 3 offenses improvident because we cannot be sure that he did not rely in some measure on the constitutionally overbroad definitions in the CPPA. However, even assuming arguendo that the appellant did so, he nevertheless readily acknowledged, clearly and repeatedly, that his conduct was service-discrediting. We agree with the appellant and are convinced, beyond cavil, that he was on fair notice that his possession and transportation of such images rendered him subject to criminal sanction. Likewise, we are convinced that *Free Speech Coalition* does not shield the appellant from the application of Article 134 in this manner. *See generally United States v. Bilby,* 39 M.J. 467 (C.M.A.1994). Thus, as to the lesser included offenses under clause 2 of Article 134, we hold that the facts revealed by the appellant himself amply and objectively support the providence of his pleas, and we have no "substantial basis in law and fact" for undermining his desire to acknowledge his guilt. *Jordan,* 57 M.J. at 238. Accordingly, we hold that his pleas to Specifications 2 and 3 of Charge I remain provident for the lesser included offenses under clause 2 of Article 134.

### *IV. Senate Report as Aggravation Evidence*

In an assigned error, the appellant asserts that the military judge erred by admitting, over defense objection, a portion of a Senate Report prepared in conjunction with proposed amendments to the Child Pornography Prevention Act of 1995. As he did at trial, the appellant asserts on appeal that this material is too attenuated to qualify as "aggravation" evidence under Rule For Courts–Martial (R.C.M.) 1001(b)(4) or to warrant admission in any event when properly weighed for unfair prejudice under Mil. R. Evid. 403.

We review the military judge's ruling on the admissibility of evidence for abuse of discretion. *United States v. McElhaney,* 54 M.J. 120, 129 (C.A.A.F.2000); *United States v. Sullivan,* 42 M.J. 360, 363 (C.A.A.F.1995); *United States v. Lake,* 36 M.J. 317, 322 (C.M.A.1993). If the military judge conducts a balancing test under Mil. R. Evid. 403, his ruling will not be overturned unless there is a "clear abuse of discretion." *United States v. Hursey,* 55 M.J. 34, 36 (C.A.A.F.2001) (citing *United States v. Ruppel,* 49 M.J. 247, 250 (C.A.A.F.1998)). However, if the judge does not articulate his balancing analysis on the record, he receives "less deference." *Hursey,* 55 M.J. at 36 (citing *United States v. Manns,* 54 M.J. 164, 166 (C.A.A.F.2000)).

In the context of this case, we perceive three facets to this issue: (1) Are the children depicted in pornographic images properly classified as "victims" for the purposes of the application of the R.C.M. 1001(b)(4)? (2) If so, does the fact that these children are not specifically identified preclude consideration of impact evidence? (3) Is the admitted portion of the Senate Report sufficiently "direct" to qualify for admission as impact evidence under R.C.M. 1001(b)(4)?

As regards the first question, we concur with the overwhelming majority of Federal circuit courts that children portrayed in pornography are the direct victims of such offenses for sentencing purposes in that they suffer a direct psychological and emotional harm through the invasion of their privacy. *See Sherman,* 268 F.3d at 547; *United States v. Tillmon,* 195 F.3d 640, 644 (11th Cir.1999); *United States v. Norris,* 159 F.3d 926, 929 (5th Cir.1998), *cert. denied,* 526 U.S. 1010, 119 S.Ct. 1153, 143 L.Ed.2d 219 (1999);

*United States v. Hibbler*, 159 F.3d 233, 236–37 (6th Cir.1998), *cert. denied*, 526 U.S. 1030, 119 S.Ct. 1278, 143 L.Ed.2d 372 (1999); *United States v. Boos*, 127 F.3d 1207, 1211 (9th Cir.1997), *cert. denied*, 522 U.S. 1066, 118 S.Ct. 734, 139 L.Ed.2d 672 (1998); *United States v. Ketcham*, 80 F.3d 789, 793 (3d Cir.1996); *United States v. Rugh*, 968 F.2d 750, 755 (8th Cir.1992); *but see United States v. Toler*, 901 F.2d 399, 403 (4th Cir.1990). *See generally* Elias Manos, *Casenote: Who Are The Real Victims Of Child Pornography? After United States v. Sherman, The Answer Is Becoming Clear*, 10 Vill. Sports & Ent. L. Forum 327 (2003). The Court in *Sherman* observed that "[c]hildren also suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse secret." *Sherman*, 268 F.3d at 547 (citing *New York v. Ferber*, 458 U.S. 747, 759 n. 10, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (citing Dr. Ulrich Schoettle, *Child Exploitation: A Study of Child Pornography*, 19 J. Am. Acad. Child Psychiatry 289 (1980))).

On the second aspect, we also concur with our sister court's well-reasoned analysis in *United States v. Marchand*, 56 M.J. 630 (C.G.Ct.Crim.App.2001), wherein they held that R.C.M. 1001(b)(4) does not require that child pornography victims be identified with particularity in order for the sentencing authority to properly benefit from impact testimony relating the increased risk such victims have of developing behavioral problems. The fact that the child or children are not identified with particularity makes them no less likely to suffer this impact.

The final question is whether the portion of the Senate Report admitted by the military judge constituted proper impact evidence for the offenses committed by the appellant. Although the exhibit consisted of six pages of the Senate Report, our attention is focused upon only one page, which discusses congressional "findings" related to child pornography.[6] That page (and a small portion of the following page) specifically addresses the impact of child pornography upon the children involved in its production, particularly the physical and psychological harm they experience. In addition, it addresses the impact upon our society as a whole, the danger to all children by the sexualization of minors, and the resulting unwholesome environment that affects the psychological and emotional development of children in general. Finally, it addresses the impact of such pornography upon, and its illicit use by, pedophiles, child molesters, and child pornographers.

R.C.M. 1001(b)(4) allows for the admission of evidence "as to any aggravating circumstances *directly relating to or resulting from the offenses* of which the accused has been found guilty" (emphasis added). The Rule goes on to explain that such evidence can include, among other things, evidence of "social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused." Although the relationship to the appellant's offenses must be "direct," there is no requirement that the impact be limited to matters that have already occurred. For instance, it is generally accepted that impact evidence can include well-established prospective impact as well. *See United States v. Stark*, 30 M.J. 328, 329–30 (C.M.A.1990) (expert testimony that child victims of sexual abuse were "at a higher risk" of suffering from long-term effects of the abuse); *United States v. Hammond*, 17 M.J. 218 (C.M.A. 1984) (evidence of the general effects of rape trauma). The purpose of R.C.M. 1001(b)(4) is to provide the sentencing authority with information about the consequences and repercussions of an accused's offenses in order that a proper sentence can be discerned. The increased predictable risk that child pornography victims may develop psychological or behavioral problems is precisely the kind of information the sentencing authority needs to fulfill that function. *Marchand*, 56 M.J. at 633. *See United States v. Vickers*, 13 M.J. 403 (C.M.A.1982). As our superior court said in a related setting, "To hold otherwise would require the trier-of-fact to operate in a vacuum. . . ." *United States v. Needham*, 23 M.J. 383, 384 (C.M.A.1987).

6. The remainder of the six pages simply contains the statutory language being proposed to amend the existing CPPA.

However, by the same token, there must be some limit on attenuation or the requirement for "direct" impact becomes meaningless. *United States v. Witt,* 21 M.J. 637, 640 n. 3 (A.C.M.R.1985). In the context of this appellant's offenses, we find that impact upon the children used in the production of the pornography is sufficiently direct and could properly assist the sentencing authority in evaluating the consequences of the appellant's criminal behavior. The focus of the appellant's argument about attenuation seems to be on the information addressing the impact of child pornography on society and children in general, and the impact upon and uses made of child pornography by other offenders. In essence, the appellant asserts that these latter impacts are simply too much to lay at his feet in the name of aggravation "directly relating to or resulting from the offenses of which the accused has been found guilty." R.C.M. 1001(b)(4). We do not necessarily agree, particularly where the appellant has not only possessed child pornography but has also been convicted of transporting it in interstate commerce. Yet, we need not resolve that issue in this case because the record clearly reflects that the military judge, at the invitation of the trial counsel, limited his consideration of the exhibit to the impacts of child pornography on the children depicted in the images charged.

During a well-litigated motion on this issue, the trial counsel specifically conceded limited relevance of the exhibit, clearly stating the government's intent that the judge consider the exhibit only as to impact upon the individual children depicted in the images:

> We believe that the United States has proven that these individual victims have been impacted. And that we are *not* talking about the community as a whole, or even the United States as a whole.... The Senate Report Findings is relevant because it sets out the impact on the individual child victims of child pornography in a photographic image or computer produced depiction.... And, your Honor, I would submit that the military judge is certainly able *to discount* discussion concerning the effects of pornography on the community as a whole and *only focus on the congressional findings concerning individual impacts.*

(Emphasis added.) In announcing his ruling, the military judge stated:

> After careful consideration and research on this matter ... I am going to allow the Senate Report, pages one through six, to be introduced under the Wit [sic] test. I believe that it gives me that discretion. And I will give it its proper weight *regarding the impact on the children.*

(Emphasis added.) In this context, the military judge's announced intent to give the exhibit "its proper weight regarding impact on the children" establishes his concurrence with trial counsel's request for limited consideration. It would have been clearer for the military judge to have required redaction of the exhibit, or to more clearly articulate his intent not to consider the non-relevant portions. However, in this judge-alone setting, we can acknowledge the military judge's ability, and clear intent, to limit his consideration of the un-redacted exhibit. *See United States v. Robbins,* 52 M.J. 455, 457 (C.A.A.F. 2000); *United States v. Cacy,* 43 M.J. 214, 218 (C.A.A.F.1995).

As regards the Mil. R. Evid. 403 balancing test, the judge did not articulate his balancing analysis explicitly on the record and, accordingly, is entitled to "less deference" in our evaluation of his exercise of discretion. *Hursey,* 55 M.J. at 36. However, in announcing his ruling, as quoted above, the judge specifically cited his reliance on the "Wit [sic] test." This reference relates to the case of *United States v. Witt,* which was the subject of discussion among counsel and the military judge during argument on the motion. In the *Witt* case, the Army Court of Military Review discussed the proper evaluation of aggravation evidence being offered for admission under R.C.M. 1001(b)(4), holding:

> We believe the requirement that the aggravating evidence must directly relate to or result from the offenses of which an accused was convicted is only the *threshold* for determining admissibility. Once this threshold is reached, the burden falls upon the military judge, in his sound discretion, to determine whether the proffered evi-

> dence is relevant. Thereafter, following a timely and specific objection based on MRE 403, the military judge also will apply the MRE 403 balancing test before admitting the document in evidence.

*Witt,* 21 M.J. at 641 (footnotes omitted). Moreover, during argument on the motion, trial counsel implicitly reiterated the necessity for the balancing test: "Under the balancing test, it is unclear from the defense's position how the evidence of impact on [sic] these pornographic images on individual child victims violates any of the provisions under Military Rules of Evidence 403." In the wake of that argument, and given the judge's stated reliance on the *Witt* scheme, wherein the Mil. R. Evid. 403 balancing test was a key part of the "test" adopted, we are satisfied that he performed that balance in arriving at his decision to admit the exhibit.

In any event, even if the judge did err in admitting the exhibit without redaction, we are unable to discern material prejudice to the appellant under the facts and circumstances discussed above. Article 59(a), UCMJ.

### V. *Conclusion*

As a result of the holdings hereinabove, as to Specifications 2 and 3 of Charge I, we affirm findings of guilty as to lesser included offenses under clause 2 of Article 134, UCMJ. Specifically, as to Specification 2 of the Charge I, we affirm a finding of guilty which finds that the appellant, 92d Civil Engineering Squadron, did, at or near Fairchild Air Force Base, Washington, on divers occasions, between on or about 14 February 2000 and on or about 13 March 2001, wrongfully and knowingly transport child pornography in interstate commerce by any means, including by computer. As to Specification 3 of Charge I, we affirm a finding of guilty which finds that the appellant, 92d Civil Engineering Squadron, did, at or near Fairchild Air Force Base, Washington, on divers occasions, between on or about 14 February 2000 and on or about 13 March 2001, wrongfully and knowingly possess materials which contained one or more images of child pornography that had been transported in interstate or foreign commerce by any means, including by computer. The remaining findings under Charge I and Charge II are also affirmed.

Having modified the findings, it is incumbent upon us to review the sentence. Since the lesser included offenses—transporting and possessing child pornography—are not listed nor closely related to an offense listed in the *Manual,* the maximum sentence for the lesser included offenses includes confinement for the same period as for violations of 18 U.S.C. §§ 2252A(a)(1) and 2252A(a)(5)(B), i.e., fifteen and five years, respectively. R.C.M. 1003(c)(1)(B)(ii). Thus, the maximum punishment is the same as that announced by the military judge at trial.

Where there has been an error causing a modification of the findings, we can reassess the sentence (instead of ordering a sentencing rehearing) if we can determine that the sentence would have been at least of a certain magnitude absent the error. *United States v. Doss,* 57 M.J. 182, 185 (C.A.A.F. 2002) (citing *United States v. Sales,* 22 M.J. 305, 307 (C.M.A.1986)). In this case, that determination is relatively straightforward where the only change in findings is from guilt under clause 3 of Article 134, UCMJ, to guilty under clause 2 of that Article. In precisely this situation in *Sapp,* addressing the three clauses under Article 134, UCMJ, our superior court explained:

> The three clauses do not create separate offenses. Instead, they provide alternative ways of proving the criminal nature of charged misconduct.... The removal of any reference to a violation of a federal statute from the specification did not alter the essential nature of the offense.

*Sapp,* 53 M.J. at 92. With the same maximum punishment for the offenses, and the same essential nature of the offenses, we are confident that the military judge would have adjudged the same sentence if the offenses had been prosecuted as violations of clause 2 of Article 134, UCMJ. Furthermore, we find the adjudged and approved sentence appropriate.

The findings as modified above, and the sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed,* 54

M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings, as modified, and the sentence are

AFFIRMED.