OPINION OF THE COURT
SMITH, Judge:
Contrary to his pleas, the appellant was convicted of nine specifications of possessing child pornography (still images and videos), in violation of Article 134, UCMJ, 10 U.S.C. § 934. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for 9 months, forfeiture of all pay and allowances, and reduction to E-l.
On appeal, the appellant asserts three errors:
I. WHETHER THE EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUSTAIN APPELLANT’S CONVICTION FOR THE CHARGES AND SPECIFICATIONS WHERE THE GOVERNMENT FAILED TO PROVE HIS POSSESSION OF THE PICTURE FILES AND VIDEO FILES WAS OF A NATURE TO BRING DISCREDIT UPON THE ARMED FORCES.
II. WHETHER SPECIFICATIONS 1 THROUGH 7 OF THE CHARGE AND SPECIFICATION 9 [OF THE CHARGE] AND THE SPECIFICATION OF THE ADDITIONAL CHARGE ARE MULTI-PLICIOUS FOR FINDINGS.
III. WHETHER SPECIFICATIONS 1 THROUGH 7 OF THE CHARGE AND SPECIFICATION 9 [OF THE CHARGE] AND THE SPECIFICATION OF THE ADDITIONAL CHARGE CONSTITUTE AN UNREASONABLE MULTIPLICATION OF CHARGES.
We address only the appellant’s first assigned error regarding the legal and factual sufficiency of the evidence.[1] Finding no error, we affirm.

Background

The appellant loaned his personal laptop computer to another Airman. The Airman noticed files on the computer he thought might contain child pornography and reported his concerns. The Air Force Office of Special Investigations (AFOSI) investigated and obtained the appellant’s consent to search his dormitory room. AFOSI agents seized the appellant’s laptop computer and a number of compact disks. The still images were found on the laptop and two short videos were found on the compact disks.
The central issue at trial was whether the appellant knowingly possessed the alleged child pornography. The defense suggested the images could have been downloaded onto the laptop without the appellant’s knowledge, either by someone else or automatically through a software program the appellant installed on his computer known as The Image Factory New York (TIFNY).
At trial, the government produced evidence that TIFNY is a program that allows access to newsgroups, some 40,000 at the time. A subscriber would get a small number of default newsgroups that could include “thumbnail” versions of images contained in the newsgroup. Additionally, a subscriber could choose any number of newsgroups to add to his or her subscription list. Each time the user opened the TIFNY program, the user’s newsgroup subscriptions would be automatically updated. AFOSI investigators discovered 21 newsgroups on the appellant’s laptop, accessed using TIFNY, that suggested questionable content based on the newsgroup names.
*722 The government grouped the still images by separate, identifiable victims into eight specifications. The military judge determined two of the specifications consisted of images of the same victim, so he merged those specifications for findings purposes. The two video files were charged in separate specifications.
The specifications involving the still images identified computer files that corresponded to the individual victims. Specification 1 of Charge I is representative:
In that AIRMAN FIRST CLASS KEVIN L. MEAD, United States Air Force, 20th Component Maintenance Squadron, Shaw Air Force Base, South Carolina, did, at or near Shaw Air Force Base, South Carolina, on or about 18 January 2003, knowingly possess 73 computer files entitled “ma-61a-15.jpg” through “ma-61a-18.jpg;” “ma-61a-20.jpg” through “ma-61a-29.jpg;” “ma-61a-32.jpg” through “ma-61a-46.jpg;” “ma-61a-48;” “ma-61a-50.jpg” through “ma-61a-52.jpg;” “ma-61a-54.jpg;” “ma-61b-15.jpg” through “ma-61b-20.jpg;” “ma-61b-22.jpg” through “ma-61b-32.-jpg;” “ma-61b-34.jpg” through “ma-61b-43.jpg;” and “ma-61b-46.jpg” through “ma-61b-57.jpg,” picture files displaying the breasts, genitals, or breasts and genitals of a minor female, which possession was of a nature to bring discredit upon the Armed Forces.
The single specification of the Additional Charge is representative of the charging approach to the video files:
In that AIRMAN FIRST CLASS KEVIN L. MEAD, United States Air Force, 20th Component Maintenance Squadron, Shaw Air Force Base, South Carolina, did, at or near Shaw Air Force Base, South Carolina, on or about 7 February 2003, knowingly possess a computer file entitled “childlover little collection video,” a video file displaying a minor female having her genitalia fondled by an unknown person, which possession was of a nature to bring discredit upon the Armed Forces.
Based on the evidence presented at trial, the only persons who knew about the appellant’s possession of the alleged child pornography were members of the Air Force: the Airman who borrowed the appellant’s laptop, supervisory personnel in the appellant’s unit, and AFOSI investigators.
The government did not present specific evidence to show how the appellant’s possession of the images was of a nature to bring discredit upon the Armed Forces. In his findings argument, the trial counsel addressed this element of the offense:
The question is, is it service discrediting? Well, the service discrediting aspect of this crime is inherent in the gut reaction that you have when you [look] at these and you say “Child pornography, ugh.” Naked eight-year-old, naked 12-year-old. There’s a gut reaction there. Child pornography disgusts our society, and that disgust, when it’s recognized and directed at an Air Force member, brings the service down. It causes a loss of esteem, a loss of respect for the armed forces. We don’t doubt the accused is guilty. He possessed it. He knew he possessed it. It is in fact child pornography, and that disgust, recognized and directed at that man, means it was service discrediting.
The military judge entered special findings about the nature of the images and the appellant’s possession of them. He concluded: “I find that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline of the Service and of a nature to bring discredit upon the armed forces.”

Discussion

We may affirm only those findings of guilty that we determine are correct in law and fact and, on the basis of the entire record, should be approved. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, a rational factfinder could have found the appellant guilty of all the elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.2000). Our superior court has determined that the test for factual sufficiency is whether, after weighing the evidence and *723 making allowances for not having personally observed the witnesses, this Court is convinced of the appellant’s guilt beyond a reasonable doubt. Reed, 54 M.J. at 41 (citing United States v. Turner, 25 M.J. 324, 325 (C.M.A.1987)).
The issue is whether the government must present evidence of a direct injury to the reputation of the armed forces—which presumably would require proof of public awareness of the conduct and the accused’s military status—to establish that the appellant’s conduct was service discrediting. Article 134, UCMJ, provides:
Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of a by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.
Manual for Courts-Martial, United States (MCM), Part IV, ¶ 60a (2005 ed.) (emphasis added).
The President has defined the nature of service discrediting conduct:
“Discredit” means to injure the reputation of. This clause of Article 134 makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem. Acts in violation of a local civil law or a foreign law may be punished if they are of a nature to bring discredit upon the armed forces.
MCM, Part TV, ¶ 60c(3) (2005 ed.) (emphasis added).[2]
There has not been a single approach to articulating the harm required under clause 2 of Article 134, UCMJ. Our superior court has identified circumstances and offenses that are not per se service discrediting, suggesting that the public must know something about the misconduct. See, e.g., United States v. Guerrero, 33 M.J. 295 (C.M.A.1991) (cross-dressing not per se service discrediting); United States v. Caballero, 49 C.M.R. 594, 595, 1975 WL 15880 (C.M.A.1975) (“where the appellant was charged with possessing narcotic paraphernalia on-board a military installation under circumstances apparently isolated from any civilian contact, it would appear that the ‘service discrediting’ provision of clause 2 is not factually supported”).
Our Army brethren have been more direct: “[T]o prove service discrediting conduct, the public must be aware of the behavior and the military status of the offender.” United States v. Green, 39 M.J. 606, 609 (A.C.M.R.1994). This Court has followed Green on at least one occasion. United States v. Armstrong, ACM 33640, 2001 WL 506255 (A.F.Ct.Crim.App. 9 Apr. 2001) (unpub.op.). But cf. United States v. Rogers, 50 M.J. 805, 809-10 (A.F.Ct.Crim.App.1999) (suggesting that proof the public was aware of the accused’s behavior or military status is not necessary), aff'd, 54 M.J. 244 (C.A.A.F.2000).
In other cases, certain misconduct has been found to be inherently discrediting to the armed forces. In United States v. Sanchez, 29 C.M.R. 32, 34, 1960 WL 4455 (C.M.A.1960), the then-Court of Military Appeals found the accused’s bestial act and lewd acts with a child so egregious that, “it would be an affront to ordinary decency to hold that an act such as the one here committed was not criminal per se and would not dishonor the service in the eyes of a civilized society.” The Army Court of Criminal Appeals too found “[s]ome acts are inherently *724 service discrediting, while others require an assessment of the circumstances surrounding the commission of the offense.” United States v. Saunders, 56 M.J. 930, 935 (Army Ct.Crim.App.2002) (citing United States v. Johnson, 39 M.J. 1033, 1037-38 (A.C.M.R.1994) (“[R]ape is inherently prejudicial to good order and discipline and discrediting to the armed forces.”)), aff'd, 59 M.J. 1 (C.A.A.F.2003).[3] See also United States v. Falk, 50 M.J. 385, 394 (C.A.A.F.1999) (Sullivan, J. dissenting) (“Possession of 126 computer images of child pornography, lasciviously organized into four directories on a personal computer, in government housing on a military post, is per se service discrediting conduct in my view.”).
Finally, Article 134, UCMJ, does not require direct injury. In the context of speech, for example, forbidden speech is measured by its tendency to damage the reputation of the military, not its actual effect. United States v. Saunders, 59 M.J. 1, 11 (C.A.A.F.2003); United States v. Hartwig, 39 M.J. 125, 130 (C.M.A.1994); United States v. Anderson, 60 M.J. 548, 554 (A.F.Ct.Crim.App.2004). The Coast Guard Court of Criminal Appeals has gone further and expressly rejected the Army’s interpretation of clause 2 of Article 134, UCMJ:
Appellant contends that his underage drinking in this setting with other underage drinkers, who may or may not have known his status in the Coast Guard, was not adequate to show discredit to the service. In particular, Appellant asserts that to establish a Clause 2 offense, it must be proved that the public was aware of both the accused’s behavior and his military status. The case he cites for this proposition, U.S. v. Green, 39 M.J. 606 (ACMR 1994), is unpersuasive; we know of no binding authority to that effect. We believe the contrary is true.
United States v. Nygren, 53 M.J. 716, 718 (C.G.Ct.Crim.App.2000).[4]
With this broad landscape, we find our superior court’s analyses of guilty pleas in child pornography cases particularly instructive. Very often, as here, child pornography is found on a member’s work or home computer and no one outside the armed forces ever knows the images have been found. When asked during the providency inquiry how possession of the images is service discrediting, an accused typically explains the reputation of the service would be harmed if the public knew about his or her misconduct. In such a case, our superior Court recently explained:
In Mason[5] we held that “receipt or possession of ‘virtual’ child pornography can, like ‘actual’ child pornography, be service-discrediting or prejudicial to good order and discipline.” Id. at 20. Roderick’s attempt to distinguish his case from Mason is unpersuasive. As we stated in Mason, a charge of receiving child pornography under clause 2 of Article 134, UCMJ, can be based on “actual” or “virtual” images. Id. Thus, the military judge’s definition which included both “actual” and “virtual” images did not impact this lesser included charge. Roderick admitted during the providence inquiry that he “failed to live up to” the “higher standard” that applies to members of the military. Roderick admitted that his actions in downloading child pornography from the Internet “may lower the service in public esteem” if people became aware of what he was doing and that “under the circumstances [his] conduct ... was of a nature to bring discredit upon the Armed Forces.” Roderick specifically emphasized that his conduct was service-discrediting because, as a member of the armed forces, he was held to a higher standard than civilians. Roderick’s response to the military judge’s questions was sufficient to demonstrate an understanding that his conduct constituted a military offense irrespective of whether it *725 would have been a dime in civilian society. See United States v. Reeves, 62 M.J. 88, 96 (C.A.A.F.2005); United States v. Hays, 62 M.J. 158, 168 (C.A.A.F.2005). This expression of Roderick’s clear understanding that his conduct in viewing and possessing child pornography on his computer was service-discrediting, and therefore prohibited by clause 2 of Article 134, UCMJ, was a sufficient basis for finding his conduct criminal. Mason, 60 M.J. at 19.
United States v. Roderick, 62 M.J. 425, 428-29 (C.A.A.F.2006). See also Anderson, 60 M.J. at 555 (“Again, as indicated earlier, a review of the 25 images admitted into evidence by the prosecution readily bears out the appellant’s belief beyond any question. These graphic images remove any reasonable doubt that they are—whether of actual or ‘virtual’ children—of a nature to bring considerable discredit upon the armed forces”).
Our superior court’s rationale applies with like force to litigated cases because it is based on the plain language in clause 2 of Article 134, UCMJ, and MCM, Part IV, ¶ 60e(3). We are concerned with conduct that is of a nature to bring discredit upon the armed forces because of its tendency to bring the service into disrepute or lower it in public esteem. We agree with the Coast Guard Court of Criminal Appeals that Green is unpersuasive, and we likewise know of no other authority that requires public awareness of an accused’s behavior and military status in order to establish the service discrediting nature of possession of child pornography.
We conclude the military judge’s findings are correct in law; that is, we are convinced a rational factfinder could have found the appellant guilty beyond a reasonable doubt of the elements of the Charges and Specifications. See Reed, 54 M.J. at 41. We also are convinced the findings are correct in fact. See id.

Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); Reed, 54 M.J. at 41. Accordingly, the approved findings and sentence are
AFFIRMED.

. We considered Issues II and III and find them to be without merit. United States v. Matias, 25 M.J. 356, 361 (C.M.A.1987).

. The 1951 MCM did not include the explanation that service discrediting conduct is that which has a tendency to bring the service into disrepute or which tends to lower it in public esteem; however, that language has been part of the MCM discussion for more than 35 years. The drafters of the 1951 MCM speculated that, given the history of this "catch-all” clause, "it would appear that the acts and the circumstances must be viewed objectively to determine whether there has been, in fact, a direct injury to the reputation of the armed forces.” Major William H. Conley, Legal and Legislative Basis—Manual for Courts-Martial, Punitive Articles 128-134, 294-95 (1951). The President has not articulated a direct injury standard for Clause 2 violations. Indeed, the current discussion language clarifies that the focus is on conduct which tends to lower the service's reputation—not conduct which, necessarily, produces direct harm.

. This Court also cited Johnson for the proposition that some conduct is inherently service discrediting. United States v. Rowe, ACM 32852 (A.F.Ct.Crim.App. 7 Apr 1999) (unpub.op.).

. The Green court cited United States v. Kirksey, 20 C.M.R. 272, 275, 1955 WL 3564 (C.M.A.1955), for the proposition that Clause 2 requires direct harm. We fail to see how Kirksey supports that interpretation.

. United States v. Mason, 60 M.J. 15 (C.A.A.F.2004).