## UNITED STATES

v.

**Senior Airman Kevin P. KUHNEL, FR 545–47–3376, United States Air Force.**

**ACM 27996.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 12 July 1989.

Decided 15 Feb. 1990.

Flight Medicine, concerning the characteristics and general effects of methamphetamine use. Citing this Court's opinion in *United States v. Eads*, 24 M.J. 919 (A.F.C. M.R.1987), *pet. denied* 25 M.J. 488 (1987), appellant contends that the military judge, *sua sponte*, should have either limited the doctor's testimony or given an appropriate limiting instruction. We disagree.

In *Eads*, this Court addressed the admissibility of an extract from a Drug Enforcement Administration (DEA) publication on the effects of amphetamines, including methamphetamines as a subclass. Referring to the government's witness as "nothing more than a drug abuse extract in the guise of a witness," appellate defense counsel suggest that the doctor's testimony in this case was objectionable under *Eads*. A careful reading of the *Eads* case, however, discloses just the opposite.

In the *Eads* case, the issue facing this Court was whether the relaxed rules of evidence for sentencing (R.C.M. 1101(c)) would allow the admission of the drug abuse extract in the face of a defense hearsay objection. In holding the extract inadmissible on hearsay grounds, we were careful to point out that it was not the "message" that was faulty, but the "medium." Indeed, as appellate government counsel point out, the prosecutor in this case seems to have followed the advice in *Eads* for overcoming the hearsay problem associated with extracts:

> As matters now stand trial counsel have no assurance that drug abuse extracts ... will survive an attack on appellate review. We offer the thought that most Air Force installations have a number of people assigned who have acquired a certain amount of expertise on the nature and effect of a variety of controlled substances. Many of these personnel could provide members with useful background information if called as witnesses.... The drug abuse information sought to be conveyed has been judicially determined to be relevant and highly useful in most instances in which an accused has been found guilty of a drug-related

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Ronald A. Gregory.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Major Terry M. Petrie and Major Paul H. Blackwell, Jr.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

PRATT, Judge:

In accordance with his plea, appellant was convicted of using methamphetamine on divers occasions over a two-month period. He was sentenced by court members to a bad conduct discharge, confinement for two months, forfeiture of $350 pay per month for two months, and reduction to airman basic. The sentence was approved by the convening authority.

Appellant alleges plain error in connection with the sentencing testimony of a prosecution witness, the local Chief of

offense. The proper means of conveying the information is what remains at issue. *Id.* at 922–923. The issue of the information's relevance had previously been squarely addressed in *United States v. Needham,* 23 M.J. 383 (C.M.A.1987). In that case, although questioning whether such extracts are a proper subject for judicial notice under Mil.R.Evid. 201, the Court of Military Appeals recognized the utility of the drug information as "circumstances surrounding that offense or its repercussions." *Id.* at 384 (quoting *United States v. Vickers,* 13 M.J. 403, 406 (C.M.A.1982)). The Court went on to explain:

> To hold otherwise would require the trier-of-fact to operate in a vacuum and be insulated from the reality of the drug epidemic in our society. Its admission is consistent with the need to afford those vested with sentencing responsibility available information which addresses all aspects of the crime so that an appropriate punishment may be decided.

*Needham,* 23 M.J. at 384.

With regard to the scope of the doctor's testimony, again appellate defense counsel seek to draw a faulty parallel with the *Eads* case. In both *Eads* and *Needham,* the Courts made reference to actions that may be taken by the military judge to "dampen the effects of" a drug abuse extract, suggesting that irrelevant portions of the extract be deleted or that a limiting instruction be given to insure that the members understand that the material in the extract "does not purport to describe the abuse engaged in by the accused." (*Eads,* 24 M.J. at 921.) As to deletion, we note that the Court in *Needham* found appropriate culled extracts (attached to that opinion as appendices) which contained information well beyond the scope of the doctor's testimony in the present case. As concerns limiting instructions, the opinion of this Court in *Eads* implied that the presence or absence of a limiting instruction is one factor to be considered in determining whether an accused has been prejudiced by the admission of a drug abuse extract, *not* that the absence of an instruction constitutes plain error *per se.*

In any event, there is an important distinction between drug abuse extracts and the testimony of a live witness. As we noted earlier, the problem has been with the medium, not the message. While extracts pose problems of hearsay or improper judicial notice, a live witness poses neither. Unlike DEA extracts, which are non-interactive and may carry undue weight in view of their published format or perceived government sponsorship, a live witness is subject to much closer examination before the court, thereby significantly reducing the possibility that inaccurate or misleading information will pass to the members unchallenged.

The present case highlights this distinction quite well. The main reason for favoring instructions in cases involving DEA extracts is that the members may confuse general information about the drug for actual information about the accused. In the case *sub judice,* after the doctor testified concerning the attributes of methamphetamine and its abuse, the defense counsel was able to establish through cross-examination that the doctor had never treated the appellant for drug abuse or any other condition and that his testimony about the drug's abuse and its various effects could not be particularized to this appellant. Although he chose not to do so in this case, trial defense counsel could also have tested the source and accuracy of the information conveyed by the witness.

Thus, with a live witness and the attendant opportunity for cross-examination, the concerns associated with extracts are dissipated. In most cases, the need for a limiting instruction will disappear for the same reason. While we encourage military judges to give an appropriate limiting instruction when requested by counsel and deemed helpful to the court members in a particular case, we will not require that such an instruction be given *sua sponte.*

In a second assigned error, appellant contends that the military judge committed plain error by failing to prohibit, *sua sponte,* prosecution references to Air Force drug abuse policy. While it is well established that such references would be im-

proper, *United States v. Myers*, 14 M.J. 527 (A.F.C.M.R.1982), we have closely examined the allegedly offensive passages from the trial counsel's voir dire and sentencing argument and find, particularly in the context in which they appear, no reasonable basis for appellant's contention that Air Force drug abuse policy was being referenced.

Lastly, pursuant to a pretrial agreement, a specification alleging use of marijuana was withdrawn after arraignment. We have considered the invited issue concerning the proper depiction of this withdrawal in the Staff Judge Advocate's Recommendation and on the General Court–Martial Order and find no error materially prejudicial to appellant.

The approved findings and sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Chief Judge HODGSON and Judge SPILLMAN concur.