**UNITED STATES**

v.

**Staff Sergeant Kelly S. ERICKSON,
United States Air Force.**

**ACM 35495.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 31 Oct. 2002.

Decided 28 April 2006.

505

Appellate Counsel for Appellant: Joseph Kastl (argued), Colonel Beverly B. Knott, Colonel Carlos L. McDade, Major Terry L. McElyea, Major Sandra K. Whittington, Major L. Martin Powell, and Major David P. Bennett.

Appellate Counsel for the United States: Major Michelle M. McCluer (argued), Colonel LeEllen Coacher, Lieutenant Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, Major Shannon J. Kennedy, Major Carrie E. Wolf, and Jesse Coleman (legal intern).

Before ORR, Senior Judge, JOHNSON, and FINCHER, Appellate Military Judges.

## OPINION OF THE COURT

ORR, Senior Judge:

The appellant was tried at McChord Air Force Base (AFB), Washington, by a military judge sitting as a general court-martial. In

accordance with his pleas, the military judge found the appellant guilty of one specification of violating a lawful order, two specifications of raping a female under the age of 12 years, one specification of sodomy with a female under the age of 12 years, two specifications of committing an indecent act upon a female under the age of 16, three specifications of taking indecent liberties with a female under the age of 16, and one specification of communicating indecent language to a female under the age of 16, in violation of Articles 92, 120, 125, and 134, UCMJ, 10 U.S.C. §§ 892, 920, 925, 934. Additionally, the appellant pled not guilty to one specification of perjury, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The appellant was found not guilty of perjury, but guilty of obstruction of justice. The military judge sentenced the appellant to a dishonorable discharge, confinement for life with the possibility of parole, and reduction to E–1. The convening authority approved the sentence as adjudged.

The case is before this Court for review under Article 66, UCMJ, 10 U.S.C. § 866. The appellant initially asserted four errors for our consideration: (1) Whether his sentence is inappropriately severe; (2) Whether he received ineffective assistance of counsel because his trial defense counsel erroneously advised him that he would be eligible for parole in 10 years so he rejected a pretrial agreement (PTA) that would have limited his confinement to 38 years; (3) Whether the military judge erred by admitting uncharged misconduct; and (4) Whether trial counsel improperly compared him to Osama Bin Laden, Adolph Hitler, and the Devil during his sentencing argument. In a supplemental filing, the appellant raised four additional errors: (1) Whether his pleas were improvident because of his mental and emotional state at trial; (2) Whether the court-martial lacked jurisdiction to try him because Article 3(a), UCMJ, 10 U.S.C. § 803(a), is unconstitutional as applied to him; (3) Whether his plea to Charge I and its Specification was improvident; and (4) Whether his plea to Charge IV, Specification 5 was improvident.[1] On 14

1. All four supplemental issues are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

February 2006, we heard oral argument in this case.

*Background*

On 31 January 2002, the appellant went to his church bishop for counseling. During the counseling session the appellant told the bishop that he had done something wrong in the past with his daughter. The bishop encouraged the appellant to reveal these wrongs to his wife as part of his repentance process. After the appellant confided in his wife that he had molested their daughter, he asked her for some time to turn himself in. After talking to several of her friends, she gave him an ultimatum. Specifically, if the appellant did not report himself to the authorities by the following Monday, 4 February 2002, she would. Her primary concern was that she did not want to risk losing her children because she did not turn the appellant in. She then took their ten-year-old daughter, BE, out to dinner and asked her whether her father had done anything wrong with her. BE disclosed that she had engaged in sexual intercourse and oral sodomy with her father. Additionally, she stated that her father had used sex toys on her, made her watch pornographic movies, and tried to get her to have sex with the neighbor's dog.

On 4 February 2002, the appellant told his commander, after rights advisement, that he had started sexually molesting his daughter a few years before. On 9 February 2002, agents from the Air Force Office of Special Investigations (AFOSI) interviewed BE. She said that she started having sexual intercourse with her father when she was four years old, and that her father fondled or had sexual intercourse with her almost every day since then, except on Sundays. She also described occasions when she showered with her father, engaged in oral and anal sodomy with him, and watched pornographic movies with the appellant. Additionally, BE revealed she lied at her father's previous court-martial involving indecent acts and indecent liberties with her then ten-year-old friend, because her father discouraged her from telling the truth. She went on to talk about a phone conversation she had with her father during which he asked her to rub her private parts. The appellant also took nude photographs of BE during the 2001 Christmas break. Lastly, BE told the investigators that her father sat her atop her nude 1–year–old brother, and, encouraged her to have sex with a dog and with her 12–year–old brother, JE.

On 20 March 2002, AFOSI agents interviewed AE, the appellant's daughter from a previous marriage. AE told them that the appellant inserted his fingers into her vagina when she was nine years old and masturbated in her presence. When she was ten years old, he had sexual intercourse with her. He also placed his hands near her crotch during a game called "Chicken."[2]

*Ineffective Assistance of Counsel*

■ The appellant believes he received ineffective assistance of counsel because his trial defense counsel misinformed him about the minimum time that he would have to serve in confinement to be eligible for parole. Specifically, he asserts that his trial defense counsel told him he would be eligible for parole after serving 10 years' of confinement if he received a sentence that included confinement for life. Additionally, he claims his counsel told him he would also be eligible for parole in 10 years if he received any confinement greater than 30 years. Based on his understanding of his potential parole eligibility, he decided not to accept an offer for a PTA limiting his confinement to 38 years because he saw no practical benefit. However, once the appellant entered confinement, he discovered that he would not be eligible for parole until he had served at least 20 years of his sentence. *See* Department of Defense Instruction 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority,* ¶ 6.17.1.2.3 (17 Jul 2001). He avers that if his trial defense counsel had given him accurate information, he would have opted to accept the PTA. Based on his belief that he received erroneous advice, he asks this Court to re-

---

**2.** From the record, it appears that "Chicken" is played when one person starts moving their hand up another person's leg, and when that person feels uncomfortable with where the other person's hand is at, they shout "chicken."

duce his sentence to include no more than 38 years' of confinement.

Claims of ineffective assistance of counsel are reviewed de novo. *United States v. Wiley*, 47 M.J. 158, 159 (C.A.A.F.1997). To prevail on a claim of ineffective assistance of counsel, the appellant must show (1) that counsel's performance was deficient; and (2) that counsel's deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The deficiency prong of *Strickland* requires that the appellant show counsel's performance fell below an "objective standard of reasonableness," according to the prevailing standards of the profession. *Id.* at 688, 104 S.Ct. 2052. There is a "strong presumption" that counsel was competent. *Id.* at 689, 104 S.Ct. 2052. The prejudice prong requires that the appellant show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

Although the appellant claims his trial defense counsel gave him erroneous advice concerning the earliest date he could be considered for parole, his trial defense counsel disputes this assertion. In an affidavit filed with this Court, the defense counsel who was primarily responsible for preparing the sentencing portion of the case asserts that she never told the appellant there was no "practical difference, based on parole between a sentence of life confinement and a sentence of 38 years' confinement." After considering the factual allegations in the appellant's affidavit, the affidavit from his defense counsel, and the record as a whole, we find no reason to order a post-trial factfinding hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411, 413, 1967 WL 4276 (C.M.A.1967), to resolve any factual disputes. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

Arguably, there is some dispute on the advice the appellant received about his earliest parole eligibility date, however, his counsel advised him to accept the PTA limiting confinement to 38 years on more than one occasion. Regardless of this advice, the appellant chose to reject the PTA limiting confinement to 38 years. Instead, he chose to offer and accept a PTA without a limitation on the amount of confinement hoping to receive a lower sentence from the military judge and leniency from the convening authority. As a result, the appellant has not convinced us that his decision to disregard his trial defense counsel's advice was based solely on the earliest possible parole eligibility date. Even if we assume that his trial defense counsel provided inaccurate information, their overall recommendation to accept the PTA was correct. Therefore, when viewing the possibility that the appellant received incorrect advice in the context of their entire representation, we are not convinced that he received ineffective assistance. *See Kimmelman v. Morrison*, 477 U.S. 365, 383–84, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

### Uncharged Misconduct

Next, the appellant argues that the military judge abused his discretion by denying a defense motion to exclude portions of the stipulated testimony of his two daughters, AE and BE. The trial defense counsel argued that portions of the stipulated testimony should have been excluded because many of the incidents took place outside the charged timeframe or when the appellant was not subject to court-martial jurisdiction. The appellant also contends that portions of the stipulated testimony were inadmissible because his children described sexual activity that he was either not present for, or did not initiate. Although the appellant is not contesting the veracity of his children or the accuracy of their stipulated testimony, he asserts that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. *See* Mil. R. Evid. 403. As a result, the appellant asks this Court to set aside the sentence and order a rehearing or otherwise grant other meaningful relief.

The appellant's trial defense counsel objected to all or portions of 15 paragraphs of AE's stipulated testimony because they contained references that the appellant sexually molested her prior to the rape alleged in Charge II, Specification 1. Specifically, AE stated that the appellant French-kissed and fondled her at her grandmother's house.

She also described how her father molested her in a motel swimming pool in her brother's presence and ejaculated on her leg later that night inside the motel room while she was sleeping with him. She also stated that the appellant fondled her "a bunch of times" and attempted to have her perform oral sex upon him.

Additionally, the appellant's trial defense counsel objected to all or portions of seven paragraphs of BE's stipulation of expected testimony. The primary focus of their objection was to paragraph 21, which reads as follows:

> One time, the summer before Dad started the Air Force, he called me into the computer room to look at something. This was after he was out of the Army. He showed me a picture of a woman having sex with a dog. He asked me if I would do that with Sammie. I said OK. Sammie was a dog we were watching for some friends. Dad took me and Sammie into the basement. I took off my pants and underwear. I got down on my hands and knees. Dad put Sammie behind me on my back. Sammie's nails were scratching up my back and it hurt. I stood up so Sammie could not be on my back anymore. I said that I didn't want to do that anymore and Dad said OK and we went upstairs. The only thing that happened between me and Sammie was his nails scratched my back.

After hearing argument on the defense motion from counsel for both sides, the military judge found that the contested portions of the statements appeared to be either earlier than the charged timeframe or during the time after the appellant left the Army and before he joined the Air Force. As such, he said he would not sentence him for these offenses. Nevertheless, the military judge ruled that the lack of jurisdiction did not make it improper for him to consider the offenses as aggravation evidence because they were part of a "continuous course of conduct involving the same victim and the same types of misconduct." The military judge acknowledged that although the misconduct described in paragraph 21 of BE's stipulation of expected testimony was "differ-ent in some unique aspects from the charged misconduct," it was still a matter of sexual misconduct upon the same victim.

Having determined that he could properly consider the uncharged misconduct, the military judge performed a Mil. R. Evid. 403 balancing test. Our review of a military judge's decision to admit evidence is limited to whether he has abused his discretion. *United States v. Dorsey*, 38 M.J. 244, 246 (C.M.A.1993). To find an abuse of discretion, we must be convinced that the military judge's decision was "clearly untenable" and deprived the accused of a "substantial right such as to amount to a denial of justice." *United States v. Travers*, 25 M.J. 61, 62 (C.M.A.1987) (quoting *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87, 90 (1984)).

■ In sentencing, "the trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Rule for Courts–Martial (R.C.M.) 1001(b)(4). Evidence of aggravating circumstances qualifying for admission during presentencing must also pass the evidentiary rule requiring that the probative value of evidence outweigh its prejudicial effect. The military judge has wide discretion in applying this rule. *United States v. Bailey*, 55 M.J. 38, 41 (C.A.A.F.2001).

The military judge, in allowing the stipulated testimony, stated:

> I believe that all this evidence is highly probative. It is certainly extremely prejudicial, but it is not unfairly prejudicial. That's the key. Indeed its prejudicial impact ties directly with its probative value. On the other hand, the fact that this is a judge alone trial is something that I am mindful of in that I can certainly put this evidence in its proper context, and without instructing myself, certainly will not sentence the accused for offenses of which he was not found guilty in this court-martial.

The military judge concluded his Mil. R. Evid. 403 balancing test by stating that the events described occurred and that the evidence was not unduly cumulative, a waste of time, or confusing. We agree.

We find that the evidence was clearly relevant, directly related to, and resulted from the appellant's acts. *See* R.C.M. 1001(b)(4). Furthermore, the probative value of the stipulated expected testimony was not substantially outweighed by undue prejudice. *See* Mil. R. Evid. 403. We note that the uncharged acts of misconduct were close in time to the charged offenses and involved the same victims. Additionally, this evidence illustrates a continuous course of conduct and is admissible as aggravation evidence during presentencing to show victim impact. *See United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F.2001). The military judge expressly performed the balancing test of Mil. R. Evid. 403 and said he was confident he could avoid confusion of the issues and would not be misled as to the appropriate weight to give the evidence. "It is undisputed that military judges are presumed to know the law and to follow it, absent clear evidence to the contrary." *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F.1997) (citing *United States v. Prevatte*, 40 M.J. 396, 398 (C.M.A. 1994)). *See also United States v. Hill*, 62 M.J. 271, 276 (C.A.A.F.2006). "When a judge indicates that he will not consider inadmissible evidence ... we presume he will do as he says." *United States v. Davis*, 44 M.J. 13, 17.

In the instant case, the military judge correctly stated the law and expressed his intent to follow it. We find nothing that causes this Court to believe otherwise. The military judge did not abuse his discretion in admitting this evidence.

*Improper Argument of Counsel*

Next, the appellant asserts that the trial counsel improperly inflamed the passions and appealed to potential religious biases of the military judge during his argument in the sentencing portion of the trial and asks this Court to set aside the sentence and order a rehearing on sentence or approve a period of confinement no greater than 40 years. Specifically, the appellant contests the following portions of the trial counsel's argument:

What is evil? It's a dramatic question. It is not a concrete question and it defies a scientific answer. It likely means something different to virtually everyone. History, current events, are replete with examples of people who have been argued who are the embodiments of evil, Adolph Hitler, Saddam Hussein, Osama bin Laden. Men who have killed innocent women and children, poisoned the world with their rage and their fanaticism. Well, as awful as those men and those actions are there is an advantage, frankly, to evil that eventually becomes so open and notorious. You can see it coming. You can prepare your defenses. It has been quipped countless times that the greatest trick the devil ever performed was convincing the world that he didn't exist. The message there is that the evil that you can't see coming, the evil that is hidden, that is so insidious. Evil can hide the pitchfork, hide the horns, hide the tail. It can hide behind a façade of respectability, a façade of caring. Even a façade of, well, this accused. [The appellant], sitting here in this courtroom, right here, right now, is evil.... This demon so masterfully manipulated his victims for so long a period of time, the little girls still don't see the evil.... Simply put, this accused, is the boogeyman.... He is evil. The place for evil, of course, is hell. His children should not suffer him a single day of freedom before he goes there [Hell]. Society should not suffer him a single day of freedom before he goes there.

The standard of review for an improper argument depends on the content of the argument and whether the defense counsel objected to the argument. The legal test for improper argument is whether it was error and "whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). If the defense counsel fails to object or request a curative instruction, the court will grant relief only if the improper argument amounts to plain error. *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F.2001); *United States v. Boyd*, 55 M.J. 217, 222 (C.A.A.F.2001); *United States v. Powell*, 49 M.J. 460, 464 (C.A.A.F.1998); *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986). *See also* R.C.M. 919(c), 1001(g).

In the case sub judice, the trial counsel clearly expressed highly inflammatory

opinions of the appellant in his sentencing argument. However, the trial defense counsel did not object to the improper argument and thus we apply a plain error analysis to determine whether relief should be granted.

The appellant argues that it was plain error for the trial counsel to refer to Adolph Hitler, Saddam Hussein, and Osama bin Laden, because their names were used only for their sensational value and to inflame the passions of the military judge. The government maintains that such matters were permissible because the references did not call for a particular result. The government also asserts that the appellant "opened the door to comments about religion" in his unsworn statement, when he said, "I grew up with a religious background." We find that the trial counsel's comparison of the appellant to these public and religious figures was error because it was designed to improperly influence the military judge's deliberations. *See United States v. Clifton,* 15 M.J. 26, 30 (C.M.A.1983). Although references to "contemporary history" or other matters of common knowledge may be allowed, the specificity, detail, and provocation of his comments went well beyond the norm and were outside the bounds of fair comment. *See United States v. Barrazamartinez,* 58 M.J. 173, 175 (C.A.A.F.2003).

Moreover, this error was plain and obvious. When the trial counsel compared the appellant to these religious and public figures, he was inviting the military judge to increase the appellant's punishment based solely on an emotional basis. These arguments were clearly improper and should have been prohibited or stricken by the military judge. *See Clifton,* 15 M.J. at 30. To summarize, we find error in the trial counsel's open criticism and personal attack upon the appellant.

Because there was no objection to these plain and obvious errors, we must next determine whether they resulted in material prejudice to a substantial right of the appellant. *Powell,* 49 M.J. at 464–65. As stated earlier, this was a military judge alone trial. After reviewing the improper comments from the trial counsel's argument in the context that they were presented, we find that they did

not materially prejudice the substantial rights of the appellant. *See Baer,* 53 M.J. at 237. Even though the military judge should not have heard the improper comments by the trial counsel, we found "no clear evidence" that he improperly considered them. *See Mason,* 45 M.J. at 484. Additionally, the misconduct in this case is so severe that we are confident the military judge would have imposed the same sentence without considering the comments. *See United States v. Fletcher,* 62 M.J. 175, 184 (C.A.A.F.2005).

## Jurisdiction

■ Next, the appellant claims that the court-martial lacked jurisdiction to try him for the majority of the charged offenses because Article 3(a), UCMJ, is unconstitutional. Article 3(a), UCMJ, states:

a person who is in a status in which the person is subject to this chapter and who committed an offense against this chapter while formerly in a status in which the person was subject to this chapter is not relieved from amenability to the jurisdiction of this chapter for that offense by reason of a termination of that person's former status.

The appellant enlisted in the United States Army on 22 January 1993. He served in the Army until 14 June 2001, when he received an honorable discharge. On 29 August 2001, the appellant enlisted in the United States Air Force for a term of four years.

Shortly after the appellant entered his pleas, the military judge sua sponte questioned the trial counsel about their position regarding the appellant's "break in service and how it may affect the very specifications that go back beyond September of—excuse me, August of 2001." The trial counsel's position was

that during all the relevant charged time frames the accused was a member of the United States Army and that the break in service does not in any way vitiate or affect the United States' jurisdiction over the charged offenses. At all the relevant charged time frames the accused was a member of the United States Army or the United States Air Force and was at all

relevant times subject to the Uniform Code of Military Justice.

The defense concurred with this position with regard to the charged offenses. The military judge admitted that the "jurisdictional impact of a break in service" and a change in branch of service was an issue that he had not considered.

Although he could not find any cases directly on point, the military judge concluded:

Article 3(a), Uniform Code of Military Justice, which the current version became effective on 23 October 1992, clearly states that despite a break in service, that when somebody reenters military service and I don't believe it makes any difference which branch it may be, whether they are the same, different, or what have you, that once an individual comes back on active duty then for offenses that occurred during a previous service over which the military courts had subject matter jurisdiction, given the fact that the court's [sic] currently have in personam jurisdiction by virtue of the fact that the individual is currently on active duty, that Article 3(a) would change a previous state of the law to indicate that the court retains jurisdiction over the offenses occurring in the previous enlistment.

Trial counsel and defense counsel both concurred with the military judge's understanding of Article 3(a), UCMJ, and its application to the appellant's offenses. As a result, the military judge continued his providence inquiry with the appellant.

During oral argument before this Court, the appellant's counsel conceded that the trial participants correctly interpreted Article 3(a), UCMJ. He acknowledged that the Article, as written, conferred court-martial jurisdiction over the appellant and the offenses the appellant committed while serving in the Army. Nevertheless, the appellant asks this Court to set aside the findings for the offenses he committed while serving in the Army because Article 3(a), UCMJ, is unconstitutional as applied to him.

The appellant cites extensively to *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), to support his argument. In *Toth*, the Supreme Court "re-strict[ed] court-martial jurisdiction to persons who are actually members or part of the armed forces" and held that it could not "be extended to civilian ex-soldiers who had severed all relationship with the military." *Id.* at 14, 76 S.Ct. 1. The appellant argues that he could not constitutionally be subjected to a trial by court-martial for offenses he committed while he was in the Army because jurisdiction terminated when he received a valid discharge from the Army. He relies on R.C.M. 202(a), Discussion (2), which provides: "In general, a person becomes subject to court-martial jurisdiction upon enlistment in or induction into the armed forces ... [and jurisdiction] ordinarily ends on delivery of a discharge certificate or its equivalent to the person concerned issued pursuant to competent orders."

The crux of the appellant's argument is that once he received his valid discharge from the Army, he became a civilian. As a result, his valid military discharge from the Army terminated jurisdiction over him and the offenses he committed while serving in the Army. He contends that once military jurisdiction is properly terminated, it can never constitutionally be revived. Although Article 3(a), UCMJ, clearly authorizes revived jurisdiction, the appellant contends that such authorization is unconstitutional because it is inconsistent with the Supreme Court's decision in *Toth*. Additionally, he asserts, as *Toth* stated, "any expansion of court-martial jurisdiction like that in the 1950 Act[, 50 U.S.C. § 553,] necessarily encroaches on the jurisdiction of federal courts set up under Article III of the Constitution where persons on trial are surrounded with more constitutional safeguards than in military tribunals." *Id.* at 15, 76 S.Ct. 1. Because civilian courts are open, they are the proper place to try the appellant for the offenses he committed while serving in the Army. We disagree.

To distinguish *Toth* from the instant case, *Toth* had severed all relationship with the military when he was arrested for the crimes he committed while in the military. Conversely, the appellant in this case committed the charged offenses while in the Army and he voluntarily returned to military control by enlisting in the Air Force. Moreover, the

**512**

Supreme Court found the 1950 version of Article 3(a), UCMJ, unconstitutional, whereas, Article 3(a), UCMJ, enacted in 1986, and amended in 1992, confers jurisdiction over the appellant in this case. *See* R.C.M. 202(a), Discussion (2)(B)(ii). Thus, *Toth* is inapplicable here. Without question the appellant was validly discharged from the Army; but, as an Air Force member on active duty at the time of his trial, he was properly subject to court-martial jurisdiction under the UCMJ. Because the charged offenses occurred after 23 October 1992, the appellant could be tried for offenses he committed during the earlier term of service in the Army. *See id.*

The appellant also contends that *Willenbring v. Neurauter,* 48 M.J. 152 (C.A.A.F.1998), supports his constitutional challenge. In that case, our superior court ruled that the military *could* assert court-martial jurisdiction over a reservist who committed misconduct while a member of the regular component. *Id.* at 158. The accused in *Willenbring* was discharged from the regular component of the Army and enlisted in the reserves the day after. While as a reservist, he was charged with rape, allegedly committed while he was serving as a member of the regular component. Pursuant to Article 2(d), UCMJ, 10 U.S.C. § 802(d), he was involuntarily recalled to active duty. *Id.* at 154.

The appellant is correct in asserting that the holding in *Willenbring* precludes jurisdiction over a former service member who has completely severed all relationships with the military as a result of a valid discharge. If the appellant had not reenlisted in the Air Force, the military would not have jurisdiction to try him by court-martial for the offenses he committed in the Army. However, our superior court in *Willenbring,* 48 M.J. at 158, reaffirmed Article 3(a), UCMJ, and the concept of revived jurisdiction when it held: "[I]f a person is subject to military jurisdiction at the time of the trial and was subject to military jurisdiction at the time of the offense, that person may be tried [by court-martial] for offenses occurring during a prior period of military service." Because of the 1992 amendment to Article 3(a), UCMJ, the

military retains jurisdiction for any offense committed in a prior enlistment subject to the statute of limitations. Additionally, court-martial jurisdiction is not limited to military offenses so the fact that a civilian court may have jurisdiction is not a bar to prosecution under the UCMJ. R.C.M. 201(d)(2). Therefore, once the appellant enlisted in the Air Force, he became subject to prosecution for all the offenses he committed while on active duty that were within the statute of limitations. *See* Article 3(a), UCMJ.

The quality and fundamental fairness of the military justice system have improved significantly since the 1955 Supreme Court decision in *Toth.* Many of the concerns that the Supreme Court expressed in *Toth* have been corrected by changes to the UCMJ and the Military Rules of Evidence. In fact, the Supreme Court's decision in *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), to eliminate the service-connection requirement for subject-matter jurisdiction, is an indication of the Court's increased confidence in the system. The Congressional intent expressed in Article 3(a), UCMJ, to expand military jurisdiction to include all offenses committed in a prior enlistment, is clear. Additionally, our superior court has determined that the Constitution does not preclude a trial by court-martial after a valid discharge, as long as the individual is a member of the armed forces or in a status subject to military law at the time jurisdiction is exercised. *Willenbring,* 48 M.J. at 158. Moreover, the facts of this case give us no reason to conclude that Article 3(a), UCMJ, is unconstitutional as applied to the appellant.

*Sentence Appropriateness*

■ The appellant claims his sentence is inappropriately severe. Specifically, he acknowledges that his actions warrant lengthy confinement, but he gives several reasons why he believes that confinement for life is far too severe based upon the facts of this case. First, he contends that we should consider the fact that he voluntarily turned himself in. Next, he avers that he protected his "children from further psychological harm by stipulating to their testimony" so they would

not have to testify during an Article 32, UCMJ,[3] investigation or in court. He also provided evidence that he was sexually molested for several years as a young child. Most importantly, the forensic psychologist that testified on the appellant's behalf at his court-martial opined that the appellant has very good rehabilitation potential and has the ability to become a productive member of society "without any significant likelihood" that he will re-offend in the future. For these reasons, coupled with his assertion that this Court has never affirmed a case where a child sex offender was sentenced to confinement for life, the appellant asks this Court to reduce the amount of his confinement to no more than 38 years, which was the final offer from the government in pretrial negotiations.

This Court may only affirm those findings and sentences we find are correct in law and fact and determine, on the basis of the entire record, should be approved. Article 66(c), UCMJ. In determining sentence appropriateness, we must exercise our judicial powers to assure that justice is done and that the accused receives the punishment he deserves. Performing this function does not authorize this Court to grant clemency. *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988). The primary manner in which we discharge this responsibility is to give individualized consideration to an appellant on the basis of the nature and seriousness of the offenses and the character of appellant. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982).

In the instant case, the appellant was convicted of offenses that involved five different children. First, he raped his daughter, AE, when she was ten years old. He then repeatedly raped and sodomized his other daughter, BE, almost daily from the time she was four years old. Additionally, he committed indecent acts, used indecent language, and took indecent liberties with her over a period of several years. According to BE's stipulated testimony, her two brothers were sometimes in the room when the appellant touched her private parts. She recalled one occasion when her father asked her to take off her clothes and sit on top of her younger

brother. The appellant also pled guilty to encouraging BE to put her hands down her older brother's pants. Finally, his conviction for obstruction of justice involved BE's denial of the appellant's inappropriate activity with her and her ten-year-old friend.

According to Dr. Thomas Coleman, a clinical psychologist, BE and JE suffered behavioral and emotional trauma as a result of their father's sexual abuse. He predicts they will struggle with depression and have significant adjustment problems throughout the rest of their lives. In her stipulated testimony, AE expressed guilt and remorse because of the appellant's actions and stated that she did not trust a lot of people. These offenses also had a significant negative impact on the appellant's former and present wives. They both provided testimony describing their guilt and self-doubt for not protecting their children from the appellant.

Although the appellant had an excellent military record, turned himself in, pled guilty, and stipulated to the children's testimony, the appellant committed these offenses on almost a daily basis for several years. Based on the serious nature of the appellant's offenses and the number of victims in this case, his sentence is not inappropriately severe. *See Healy*, 26 M.J. at 395–96; *Snelling*, 14 M.J. at 268.

### Other Issues

Finally, we considered the appellant's remaining assignments of error and find them to be without merit. *See United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996); *United States v. Jordan*, 57 M.J. 236, 238–39 (C.A.A.F.2002); *United States v. Matias*, 25 M.J. 356, 361 (C.M.A.1987).

### Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are

AFFIRMED.

Judge FINCHER participated in this decision prior to his reassignment.

3. 10 U.S.C. § 832.

JOHNSON, Judge (concurring in the result):

I cannot concur with the majority as it relates to the resolution of the third Issue; Whether the military judge abused his discretion in considering, over defense objection, sentencing evidence involving uncharged misconduct. At issue is the admission of a portion of a stipulation of expected testimony of BE:

> One time, the summer before Dad started in the Air Force, he called me into the computer room to look at something. This was after he was out of the Army. He showed me a picture of a woman having sex with a dog. He asked me if I would do that with Sammie. I said OK. Sammie was a dog that we were watching for some friends. Dad took me and Sammie into the basement. I took off my pants and underwear. I got down on my hands and knees. Dad put Sammie behind me and on my back. Sammie's nails were scratching up my back and it hurt. I stood up so Sammie could not be on my back anymore. I said that I didn't want to do that anymore and Dad said OK and we went upstairs. The only thing that happened between me and Sammie was his nails scratched my back.

The military judge admitted the testimony and addressed each of the stipulations of expected testimony: "And again, I'd be a little bit concerned if this was a members case, although I think that with an appropriate instruction that could be overcome given the amount of uncharged misconduct. But, I can certainly put it into its proper context and believe that the probative value of the victim impact is not substantially outweighed by the undue prejudice or any of the other factors listed in [Mil. R. Evid.] 403." The military judge overruled the defense counsel's objection.

I cannot say the probative value of the uncharged misconduct is not substantially outweighed by the danger of unfair prejudice. However, although I find it was error to consider this evidence in aggravation, it was not prejudicial. The test for prejudice is whether the sentence adjudged was "no greater than that which would have been imposed if the prejudicial error had not been committed." *United States v. Kinman*, 25 M.J. 99, 101 (C.M.A.1987) (citing *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A. 1985)).

The facts in this case are particularly egregious. The majority opinion more than adequately describes the heinous nature of this appellant's crimes committed against his minor children. Had the military judge not admitted this uncharged misconduct, the sentence adjudged would be "no greater than that which would have been imposed if the prejudicial error had not occurred." *See id.*