UNITED STATES

v.

**Airman First Class Jarrod T. LUTES,
United States Air Force.**

ACM 37665.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 23 March 2010.

31 Jan. 2013.

Appellate Counsel for the Appellant: Colonel Eric N. Eklund; Lieutenant Colonel Gail E. Crawford; and Major Daniel E. Schoeni.

Appellate Counsel for the United States: Colonel Don M. Christensen; Major Deanna Daly; Major Naomi N. Porterfield; and Gerald R. Bruce, Esquire.

Before STONE, ROAN, and HECKER, Appellate Military Judges.

## OPINION OF THE COURT

HECKER, Judge:

A general court-martial composed of officer members convicted the appellant, in accordance with his pleas, of possession of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The adjudged sentence consisted of a bad-conduct discharge, confinement for 24 months, forfeiture of all pay and allowances, and reduction to E–1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for 20 months, forfeiture of all pay and allowances, and reduction to E–1. On appeal, the appellant assigns three errors: that the military judge erred by (1) admitting portions of a Congressional report as aggravation evidence, (2) judicially noticing that report, and (3) overruling a defense objection to trial counsel's sentencing argument characterizing the appellant as a "predator." Finding no error that materially prejudices the appellant, we affirm.

### Background

During a six-week period, the appellant used a peer-to-peer sharing program to access adult and child pornography. Using the search term of "young sex," he found and downloaded onto his personal computer over 50 electronic video files depicting minors engaged in sexual conduct. He was discovered when state police linked his computer's Internet Protocol address to child pornography saved within the sharing system. Although none of the children in the images were identified by authorities, the appellant did not believe the images were morphed or virtual. He pled guilty to wrongfully possessing visual depictions of minors engaging in sexually explicit conduct and admitted his conduct was of a nature to bring discredit upon the armed forces.

As part of its sentencing case, the Government asked the military judge to take judicial notice, pursuant to Mil. R. Evid. 201A(a), of certain Congressional findings found in a report prepared by the Senate Judiciary Committee (hereinafter "Committee Report") in conjunction with the proposed Child Pornography Prevention Act of 1995.[1] *See* S.REP. No. 104–358 (1995).[2] The Government argued the Committee Report could be judicially noticed as "domestic law" because it was an "enactment of a legislative body," and that its references to the dangers of child pornography were substantively admissible as aggravation evidence based on this Court's decision in *United States v. Anderson,* 60 M.J. 548, 555 (A.F.Ct.Crim.App.2004).

The appellant disagreed, contending this Committee Report did not meet the prerequisites for admissibility under judicial notice and, therefore, had to meet authentication and hearsay requirements prior to admission. The defense also argued the holding of *Anderson* was inapplicable since here the appellant was not charged with distribution of child pornography and was facing sentencing by panel members, not a military judge.

The military judge elected to admit a portion of the Committee Report, holding legislative history is judicially noticeable as "adjudicative facts" under Mil. R. Evid. 201(a), although he noted *Anderson* constituted a "rather tenuous foot in the door" for this decision. After conducting a Mil. R. Evid. 403 balancing test, he admitted a redacted version of the Committee Report, overruling the appellant's additional objections that the excerpt was not properly authenticated and described matters beyond the harm to the unidentified children in the images he possessed.

During the Government's sentencing case, the trial counsel read the admitted Committee Report excerpt to the members, stating "Congress finds" certain statements to be

facts, including that the children used in the pornographic images will suffer current and future harm; all children will suffer current and future harm due to its representation of children as sexual objects; child pornography presents an even greater threat to the child victim than sexual abuse or prostitution and undermines the efforts of parents and families to encourage the sound mental, moral and emotional development of their children; and "child pornography is a particular pernicious evil, something that no civilized society can or should tolerate."

> The military judge informed the members: I have taken judicial notice of portions of the legislative history of the Child Pornography Prevention Act of 1995 [sic]. . . . This means that you are now permitted to recognize and consider those facts without further proof. They should be considered by you as evidence with all other evidence in the case. You may, but are not required to, accept as conclusive any matter that I have judicially noticed. This judicial notice and the evidence presented on this issue is specifically limited for your consideration on the issue of the direct impacts of the visual depictions involved in this case on the victims thereof, and for no other purpose.

The trial counsel utilized some language of the Committee Report during her sentencing argument, when she stated:

> Child pornography involves the sexual exploitation of children. Children-the most vulnerable members of our society. And when that child pornography is then put on the Internet for the world to see, it is the continuation of the victimization of the very real children that are involved in that child pornography. . . . That child has to wonder for the rest of [her] life who will then see that sexual exploitation. . . . [P]ossessing child pornography is a continuation of the very real victimization of those chil-

---

1. Following amendment, this bill was enacted into law as the Child Pornography Prevention Act of 1996. The Supreme Court subsequently found the portion of this statute criminalizing distribution or possession of "virtual" child pornography to be unconstitutionally overbroad in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 239, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

2. These "findings" were made after the Senate Judiciary Committee heard testimony and received information from multiple witnesses. *See Child Pornography Prevention Act of 1995: Hearing before the Senate Judiciary Committee,* 104th Cong., 2d Sess. (S.Hrg. 104–870) (June 4, 1996).

dren involved.... [A]s stated in the Senate Report those images are a photographic record of a crime in progress.... The cycle of victimization ... must be stopped ... one child pornography possessor at a time.

In the sentencing argument, the trial counsel also described two scenarios where a child will fear his or her images being available on the Internet—when "some sexual predator" manipulates an innocuous family picture of a child in order to make it sexually exploitative and when a child is actually sexually abused in the making of a similar image. The military judge overruled a defense objection to the "characterization of [the appellant as a] 'sexual predator.'" Trial counsel went on to argue the appellant was "the realization of that fear," as he was someone who searched for, downloaded and possessed images involving sexual exploitation of children.

*Judicial Notice of the Committee Report*

■ We will review a military judge's decision whether to take judicial notice for an abuse of discretion. *See United States v. Moore*, 55 M.J. 772, 781 (N.M.Ct.Crim.App. 2001); *Cravens v. Smith*, 610 F.3d 1019, 1029 (8th Cir.2010); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir. 2008); *Person v. Miller*, 854 F.2d 656, 660 (4th Cir.1988). That discretion is abused when evidence is admitted based upon an erroneous view of the law. *United States v. Holt*, 58 M.J. 227, 231 (C.A.A.F.2003). We find the military judge abused his discretion by using judicial notice to admit the Committee Report into evidence in sentencing.

■ The Government can admit evidence, including matters in aggravation, for the fact-finder's use in a sentencing decision if (1) it is admissible under the Military Rules of Evidence, and (2) it is a proper matter to be presented under Rule for

Courts–Martial (R.C.M.) 1001(b). When the process of judicial notice is used to admit evidence under the Military Rules of Evidence, it is an evidentiary shortcut that permits applicable facts to be established without the presentation of proof by testimonial or real evidence. Because the safeguards involved in the usual process of proving facts by competent evidence are bypassed, the taking of judicial notice of facts is, as a matter of evidence law, a process whose exercise is highly limited. *See Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir.1997); *York v. AT & T*, 95 F.3d 948, 958 (10th Cir.1996); *United States v. Harrison*, 651 F.2d 353, 355 (5th Cir.1981).

In the context of judicial notice, the Analysis of Mil. R. Evid. 201, Drafter's Analysis, *Manual for Courts–Martial, United States*, A22–4 (2008 ed.) (hereinafter "Drafters Analysis"), references both "adjudicative facts" and "legislative facts," and the "highly confusing" distinction between them.

■ As does its federal counterpart, Mil. R. Evid. 201 authorizes judicial notice of "adjudicative facts" which are defined as "simply the facts of the particular case." *See* Drafters Analysis at A22–4. Domestic law can constitute an adjudicative fact and be eligible for judicial notice if it is a "fact that is of consequence to the determination" of the case.[3] Mil. R. Evid. 201A; Drafters' Analysis at 22–5. Adjudicative facts would typically be resolved by the fact-finder in a particular case in determining who did what, where, when, how and with what intent. *United States v. Jackson*, 18 M.J. 403, 406 (C.M.A.1984); Stephen A. Saltzburg, et al., *Military Rules of Evidence Manual* § 201.02[2], at 2–3 (7th ed. 2011). Mil. R. Evid. 201 limits the adjudicative facts that may be judicially noticed to those "not subject to reasonable dispute." This includes

3. "Domestic law" includes treaties of the United States; executive agreements between the United States and any State, foreign country or international organization; the laws and regulations of the United States (which includes regulations of the armed forces) or of a State; international law; and the common law. *See* Drafters' Analysis, Drafter's Analysis, *Manual for Courts–Martial, United States*, A22–5 (2008 ed.) (hereinafter "Drafters' Analysis"). *See United States v. Ayers*, 54 M.J. 85, 90 (C.A.A.F.2000) (a general regulation is a proper subject of judicial notice in a case charging a member with a violation of such a regulation). *United States v. Commander*, 39 M.J. 972, 977 (A.F.C.M.R.1994) (panel instructed the military judge had taken judicial notice that anabolic steroids are a Schedule III controlled substance under the Controlled Substances Act of 1970).

adjudicative facts that are (1) "generally known universally, locally, or in the area pertinent to the event," or (2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Mil. R. Evid. 201(b).[4]

◼ In contrast, "legislative facts" are those that "relate to questions of law, policy or legal reasoning" and "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Saltzburg, et al., *supra*, at 2–3; Drafters' Analysis at A22–4 and 5. They arise in two contexts— when a legislature enacts a law through its lawmaking function and when a judge or court "makes law" through judicial rulings or holdings. The most obvious employment of "legislative facts" occurs when legislatures make or rely on certain factual findings as they enact statutes or laws.[5] *See Turner Broad. Sys. v. FCC*, 520 U.S. 180, 199, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997) (stressing the importance of Congress' fact-finding function); *Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (A

legislature's classification of certain taxpayers was based on legislative facts which rationally may have been considered true by the state legislature.).

◼ Here, the parties and the military judge agreed the Committee Report was a compilation of "legislative facts," which had relevance to Congress' lawmaking function when it was considering the enactment of a Child Pornography Prevention Act of 1995. The military judge then incorrectly judicially noticed these "legislative facts" and allowed the prosecution to present them to the court-martial panel as "adjudicative facts" to be considered in reaching an appropriate sentence.

First, the report was prepared by a Senate committee to document its rationale behind proposed legislation but does not, standing alone, constitute "domestic law" as defined in Mil. R. Evid. 201A.[6] Second, "legislative facts" are not appropriate for presentation to and consideration by a panel that is deliberating on an accused's guilt or sentence as, by definition, they are relevant to legal reasoning or lawmaking, not to the facts that oc-

---

4. Examples of adjudicative facts subject to judicial notice include the ordinary division of time into years, months, weeks and other periods; general facts and laws of nature; general facts of history; propositions of generalized knowledge so universally known that they cannot reasonably be the subject of dispute, etc. Drafters' Analysis at A22–4; *United States v. Watson*, 37 M.J. 166, 167 (C.M.A.1993) (taking judicial notice of the date Iraq invaded Kuwait); *United States v. Garwood*, 20 M.J. 148, 154 (C.M.A.1985) (taking judicial notice of when Richard Nixon's second term of office began and ended); *United States v. Stroud*, 27 M.J. 765, 770 (A.F.C.M.R.1988) (judicially noticing the location and mission of Torrejon Air Force Base).

5. "Legislative facts" are also utilized during "judicial law-making" where a judge or court formulates a rule to fill a gap in the common law, determines the constitutionality of a statute, interprets a statute, or frames a constitutional rule. John W. Strong, *McCormick on Evidence*, §§ 328 and 331, at 269 and 380–385 (5th ed. 1999); *United States v. Brundidge*, 20 M.J 1028, 1029–1030 (A.C.M.R.1985). In addition to using his or her own personal knowledge or views when performing this function, a court may consider the findings of a legislature or other aspects of a statute's legislative history. *See Free Speech Coalition*, 535 U.S. at 242, 270, 122 S.Ct. 1389 (referencing the Committee Report as part of the legislative history that limits the scope of the

Child Pornography Prevention Act of 1996); *United States v. Disney*, 62 M.J. 46, 51 (C.A.A.F. 2005) (considering factual findings within a committee report to conclude it was within Congress' constitutional authority to create an offense of storing stolen explosives). In some instances of judicial "law-making," military appellate courts have considered the same Committee Report at issue in this case. *See United States v. James*, 55 M.J. 297, 300 (C.A.A.F.2001) (referencing Committee Report 104–358 when electing not to second guess Congress' decision to criminalize the distribution or possession of "virtual" child pornography); *United States v. Martinelli*, 62 M.J. 52, 61 (C.A.A.F.2005) (considering Committee Report 104–358 when determining Congress did not intend the Child Pornography Prevention Act of 1996 to apply extraterritorially). Domestic law itself can constitute a "legislative fact" utilized by a court or judge in its decision making process. Drafters' Analysis, at A22–5.

6. Our conclusion on the impropriety of using judicial notice to admit the Committee Report is not changed by the fact that some of its findings were eventually included as Congressional "findings" for the Child Pornography Prevention Act of 1996, as those are also "legislative facts." *See* Public Law 104–208, 110 STAT. 3009 at 26–27 (1996).

curred in a particular case. The "judicial notice" instruction for panel members makes this clear, as there is no instruction for how they should evaluate or utilize "legislative facts" brought to their attention. Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, ¶ 7–7–6 (17 January 2010). Third, the information found within this excerpt does not meet the criteria to be considered "adjudicative facts" as it is not "generally known" or capable of ready verification through sources whose accuracy cannot reasonably be questioned.

Therefore, it was an abuse of discretion to admit this document through the evidentiary shortcut of judicial notice.[7] This case is different from *Anderson* because the trial defense counsel here objected to the government's effort to admit the Committee Report through judicial notice. In *Anderson*, there is no indication the trial defense counsel ever objected to the document's admission under the Military Rules of Evidence and instead limited the objection to whether it constituted proper matters in aggravation under R.C.M. 1001. As such, this Court in *Anderson* did not address whether Congressional findings and reports may be admitted in evidence pursuant to Mil. R. Evid. 201 and 201A.[8]

■ Having determined the military judge erred in judicially noticing and admitting the Committee Report, we must assess prejudice. We test the erroneous admission of evidence in sentencing by assessing whether the error substantially influenced the adjudged sentence. *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F.2005). If so, the result is material prejudice to an accused's substantial rights. *Id.*

■ We find the erroneous admission of the Committee Report did not have a substantial influence on the adjudged sentence received by the appellant. First, a limiting

instruction informed the panel they could only use the contents of the Committee Report in considering the direct impact these pornographic images had on the child victims. The panel members were also told they did not have to accept the Committee Report as conclusive. Additionally, although the trial counsel's sentencing argument did use some language and concepts similar to those found within the Committee Report, she also emphasized the appellant's repeated searching for and downloading of a variety of graphic images and the volume of material he downloaded during a short time period. Given the disturbing images the appellant possessed and his acknowledgement that the images sexually excited him, we are confident the admission of the Committee Report did not substantially influence the members' judgment on his sentence. Furthermore, having considered the character of this offender (including his disciplinary record and duty performance), the nature and seriousness of his offenses, and the entire record of trial, we find his sentence appropriate. *United States v. Baier*, 60 M.J. 382, 384–85 (C.A.A.F.2005); *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982).

### The Trial Counsel's Argument

■ "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). The standard of review "depends on the content of the argument and whether the trial defense counsel objected to the argument." *United States v. Erickson*, 63 M.J. 504, 509 (A.F.Ct.Crim.App.2006).

■ We find no error in trial counsel's use of the phrase "sexual predator" during her sentencing argument. She did not characterize the appellant as a sexual predator who creates child pornography, either by us-

---

7. The trial counsel did not establish that the Committee Report qualified for admission as an exception to the hearsay rule. *See United States v. Eads*, 24 M.J. 919, 921 (A.F.C.M.R.1987); *United States v. Kuhnel*, 30 M.J. 510, 511–12 (A.F.C.M.R.1990).

8. Because we find the document inadmissible under the Military Rules of Evidence, we do not address whether all aspects of the Committee Report qualify as aggravation evidence under Rule for Courts–Martial (R.C.M.) 1001(b)(4). *See Anderson*, 60 M.J. at 556–557 (holding evidence of child pornography's impact on the children used in its production is admissible under R.C.M. 1001(b)(4)).

ing actual children or manipulating family photographs. Instead, she correctly noted the children portrayed in the materials possessed by the appellant could fear their images will be forever available for individuals like the appellant to download and possess. As such, trial counsel's argument was a reasonable inference from the evidence presented.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error

prejudicial to the substantial rights of the appellant occurred.[9] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are

AFFIRMED.

9. Though not raised as an issue on appeal, we note that the overall delay of more than 540 days between the time of docketing and review by this Court is facially unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F.2006). Having considered the totality of the circumstances and the entire record, we find that the appellate delay in this case was harmless beyond a reasonable doubt. *Id.* at 135–36 (reviewing claims of post-trial and appellate delay using the four-factor analysis found in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). *See also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F.2006); *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F.2002).